IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CX REINSURANCE COMPANY LIMITED
*Plaintiff*,

v.

B&R MANAGEMENT, et al.
*Defendants.*

Civil Action No. ELH-15-3364

## MEMORANDUM

Plaintiff CX Reinsurance Company Limited ("CX Re"), formerly known as CNA Reinsurance Company Limited, filed suit against B&R Management, Inc. ("B&R") with respect to two commercial general liability insurance policies issued to B&R.  ECF 1.  In its First Amended Complaint (ECF 25), CX Re added as additional defendants named insureds Jessica-Carl, Inc.; Arbor, Inc.; and Burton King, as well as Alfred Slattery, who assisted B&R in procuring the insurance policies.  *Id.*  CX Re alleges that, in B&R's application for insurance, B&R and Slattery misrepresented that B&R had never had any lead paint violations in the rental buildings covered under the policies.  ECF 1.  CX Re has asserted claims of fraud against B&R and Slattery.  It also seeks rescission of both policies, which were cumulatively in effect from August 1, 1997 to August 1, 1999.  ECF 25 ¶¶ 11, 56, 65.  And, it seeks damages resulting from the alleged fraud.

Sean Nicholson, a plaintiff in a lead paint suit filed in the Circuit Court for Baltimore City against, *inter alia*, B&R, King, and Jessica-Carl, Inc., has moved to intervene as a defendant in this case.   ECF 33.  Along with seven other proposed intervenors in other cases filed by CX Re in this District, Nicholson filed a joint memorandum of law.  ECF 33-1 (collectively, "Motion").  In sum, Nicholson argues that he has an interest in opposing CX Re's request for

rescission, because this would deprive him of a source of funds if he prevails in his lead paint suit. Nicholson has appended to his Motion a proposed answer, counterclaim, and crossclaim. ECF 33-2.

CX Re opposes the Motion (ECF 42, "Opposition"). Nicholson has replied. ECF 53 ("Reply").[1] Notably, defendants have not filed an opposition. *See* docket.

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.[2]

## I.   Factual Background and Procedural History[3]

CX Re is an insurer organized under the laws of the United Kingdom, with its principal place of business in London. ECF 25 ¶ 3. B&R is a Maryland corporation in the business of owning and managing rental housing in the Baltimore area. *Id.* ¶ 4.

In 1997, Slattery, B&R's agent, submitted a "Commercial General Liability Application" to CX Re on behalf of B&R, as well as "Supplemental Application-Habitational Risks" ("Application"). *Id.* ¶¶ 17-18; *see* ECF 1-4. The Application identified Jessica-Carl, Inc; Jessica Carl; Arbor Inc.; Arbor Inc. KSS LLC; and B&R as named insureds. *See* ECF 1-4.

Question 16 of the Application asked: "Has the insured received any complaints from any tenant in the building of a possible lead paint condition in the building." *See id.* On the Application, the line next to the word "No" was checked. *See id.*; *see also* ECF 25 ¶ 20. In addition, the Application stated: "By signing this Supplemental Application the insured acknowledges that the insured understands that [CX Re] is relying on the information provided,

---

[1] The Reply was filed jointly by all of the proposed intervenors in other cases in this District.

[2] Slattery has moved to dismiss (ECF 40), but that motion is not yet ripe.

[3] Given the posture of this case, I accept as true the allegations in the Complaint.

and the answers to the questions asked, in deciding whether to issue a policy of insurance to the insured." *See* ECF 1-4 (capital letters in original). On July 3, 1997, Slattery signed the Application as the "Producer" and on July 18, 1997, King signed the Application as the "Insured." *See id.*; *see also* ECF 25 ¶¶ 21, 22.[4]

CX Re issued Policy No. CNAGL1106-97 to B&R for the period August 1, 1997 to August 1, 1998, "in reliance on the representations made in the Application . . . ." ECF 25 ¶¶ 11, 24; *see* ECF 1-2 (Policy No. CNAGL1106-97). That policy was subsequently renewed for the period from August 1, 1998 to August 1, 1999, as Policy No. CNAGL1240-98. *Id.* ¶ 11; *see* ECF 1-3 (Policy No. CNAGL1240-98) (collectively, "Policies"). The Policies "provide commercial general liability coverage to B&R Management " and "insure B&R Management for certain risks in connection with specified residential buildings at numerous locations in Baltimore, Maryland." ECF 25 ¶¶ 12, 13. The Policies also contain an endorsement entitled "Schedule of Named Insureds", naming, *inter alia*, Jessica-Carl, Inc.; Arbor, Inc.; and Burton King. *Id.* ¶ 14. And, the Policies contain an endorsement entitled "Schedule of Locations." *Id.* ¶ 15.

CX Re contends that "B&R Management's answer to Question 16 [on the Application] was false and misleading because, prior to July 1997, the Baltimore City Department of Health had cited B&R Management for a lead paint violation in a building included on the Policies' Schedule of Locations." ECF 25 ¶ 25. In particular, CX Re points to the "Emergency Violation Notice and Order to Remove Lead Nuisance" issued by the Baltimore City Health Department on July 26, 1996, concerning the property at 3215 Baker Street. *Id.*; *see* ECF 25-2 (Violation #

---

[4] In its Amended Complaint, CX Re states that King signed the application on July 10, 1997. ECF 25 ¶ 23. From my review of the Application, the date appears to read July 18, 1997. *See* ECF 1-4. For purposes of the Motion, the difference is of no significance.

3653, "Violation").   That property was included on the endorsement titled "Schedule of Locations."  ECF 25 ¶ 15.

The Violation stated, ECF 25-2 at 3:

It has been determined from elevated blood lead and an investigation by the Baltimore City Health Department that a child who frequents the above dwelling has an abnormal blood lead level. An inspection of this dwelling shows it contains lead based paint.

Such condition has been deemed by the Commissioner of Health to be hazardous to life and health and a public health nuisance.

CX Re asserts, ECF 25 ¶ 26: "The existence of this undisclosed, pre-Application Violation renders the 'No' answer to Question 16 false."  According to CX Re, it did not learn of the Violation until August 2015.  *Id.* ¶ 27.

Nicholson, who was born in August 1995, alleges that he "resided in a rental property owned and operated by one of the B&R Defendants while he was a young child,"  where he "was exposed to lead paint during . . . and sustained injuries as a result."  ECF 33-1 at 9.  On July 15, 2016, he "sued certain B&R Defendants in the Circuit Court for Baltimore City . . . Case No. 24C16004070."  *Id.* at 9-10.  Nicholson asserts: "One or more of the B&R Policies was in force when Mr. Nicholson sustained his injuries."  *Id.* at 10.  Therefore, Nicholson argues that he should be permitted to intervene in this case because, if CX Re prevails in its rescission action, the judgment "would eliminate CXRe's obligation to cover damages awards against its insureds and in favor of the Lead Paint Victims."  *Id.* at 18.

## II.    Standards of Review

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure.  It provides, in relevant part:

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Nicholson seeks intervention under both Fed. R. Civ. P. 24(a) and 24(b).

## A.  Intervention of Right

In *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), the Fourth Circuit explained the standard for intervention of right under Rule 24(a)(2).  It said, *id.* at 349 (quoting *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)):

[A] district court must permit intervention as a matter of right if the movant can demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that

the applicant's interest is not adequately represented by existing parties to the litigation."

In addition to the three factors listed in *Stuart*, "timeliness is [also] a 'cardinal consideration' of whether to permit intervention . . . ." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citation omitted).

Under Rule 24(a)(2), once an intervenor has satisfied the three criteria for mandatory intervention, the burden of persuasion shifts such that intervention is mandatory, "unless the court is persuaded that the representation is in fact adequate.[]" 7C C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1909, at 390 (3d ed. 2007, 2016 Supp.).

In order to intervene as of right, a movant's interest in the action must be "'significantly protectable'" and a movant must "stand to gain or lose by the direct legal operation." *Teague*, 931 F.2d at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Moreover, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." *Com. of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (alteration added); *see also Stuart*, 706 F.3d at 350.

In *Teague*, 931 F.2d at 261, the Fourth Circuit determined that intervention was permitted as a matter of right in a declaratory judgment action brought by an insurance company against an insured party, where the intervenors had filed a class action suit against the insured party in a separate case. *Id.* According to the Court, the intervenors stood "to gain or lose by the direct legal operation of the district court's judgment on [the insurance company's] complaint." *Id.* In particular, the Court noted that if the insurance company prevailed, the intervenors/class action

plaintiffs would "have to satisfy their judgment from other assets of the insureds and the existence and amount of such assets are questionable." *Id.*

## B. Permissive Intervention

Even if Rule 24(a)(2) does not mandate intervention, a party may be entitled to permissive intervention under Rule 24(b). *See Stuart*, 706 F.3d at 349. The decision to grant or deny permissive intervention "'lies within the sound discretion of the trial court.'" *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 386 (4th Cir. 1982)); *see also McHenry v. C.I.R.*, 677 F.3d 214, 219 (4th Cir. 2012).

In *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004), then-District Judge Andre Davis distilled, from "the text of Rule 24(b) itself [and] case law interpreting the rule", four conditions for permissive intervention, *id.* (citations omitted; alterations added):

> (1) that [the intervenor's] motion is "timely"; (2) that its "claim or defense and the main action have a question of law or fact in common" . . . ; (3) that there exists an independent ground of subject matter jurisdiction; and, (4) that "intervention will [not] unduly delay or prejudice the adjudication of the rights of the original parties."

In *Stuart*, 706 F.3d at 350, the Fourth Circuit discussed the challenges that flow from the addition of parties to an action, noting: "Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial." The Court observed: "This is particularly so where . . . the proposed intervenors are themselves differently situated entities." *Id.*

## III.   Discussion

As noted, Nicholson argues that he should be permitted to intervene as of right under Rule 24(a), or in the alternative, under Rule 24(b). ECF 33. I review each, in turn.

### A.  Intervention as of Right

Relying on Rule 24(a), Nicholson contends that he has a stake in this action because "[a] judicial determination that CXRe is entitled to rescission would eliminate the Lead Paint Victims' ability to recover under those policies."  ECF 33-1 at 17.  In particular, Nicholson asserts that, if CX Re prevails in its action here, the judgment "would eliminate CXRe's obligation to cover damages awards against its insureds and in favor of the Lead Paint Victims." *Id.* at 18.  Further, Nicholson avers, *id.*: "This coverage may provide the only meaningful source of recovery for the Lead Paint Victims' injuries. Certainly, the defendants' ability to satisfy an award of damages for lead paint injuries is more limited than CXRe's, and the Lead Paint Victims would be able to look only to the defendants' assets to collect for their injuries."

Nicholson claims that, as in *Teague*, "the 'existence and amount of [the defendants'] assets are questionable.'"  *Id.* (quoting *Teague*, 931 F.2d at 261) (emphasis in ECF 33-1 omitted).  In support of this allegation, he states, *id.*: "Many property owners who regularly appear as defendants in lead paint cases have undertaken sophisticated asset protection measures to impair creditors' ability to collect or have denied having any assets."

Judge Bredar recently considered the matter of intervention in a similar case, in *CX Reinsurance Co. Ltd. v. Leader Realty Co., et al.*, JKB-15-3054, in which one of the proposed intervenors submitted the same memorandum of law that Nicholson has submitted here.[5]  *Id.*, ECF 74.  Judge Bredar determined that the proposed intervenors failed to demonstrate intervention as of right.  He said, *id.* at 2-3:

> The Court can find no basis . . . for finding that Movants have adequately shown the second required element of Rule 24(a)(2), *i.e.*, that "disposition of the action may practically impair or impede the movant's ability to protect that

---

[5]  As noted, proposed intervenors in six cases before this Court filed the same memorandum of law in support of their motions to intervene.  *See* ECF 33-1.

interest." In the *Teague* case, the Court noted that if the insurance company there were to prevail in its declaratory action against the defendant insureds such that the court were to rule against the defendants on the question of coverage, then the intervenors would have to satisfy any judgment against the defendants from assets other than the policy proceeds, "and the existence and amount of such assets are questionable" due to defendants' poverty. *Id.*

Judge Bredar concluded: "Movants here have made no similar showing that the existence and amount of Defendants' assets are questionable and, therefore, have not established the second element for intervention as of right."  ECF 74 at 3 in JKB-15-3054.

I am persuaded by Judge Bredar's analysis.  The proposed intervenor here, making the same allegations considered by Judge Bredar, has provided nothing other than a bald assertion that B&R's assets are "'questionable.'"  ECF 33-1 at 18 (citation omitted).  The fact that Nicholson claims that "[m]any property owners" in lead paint cases undertake steps to prevent the collection of judgments (*id.*) is not sufficient to demonstrate that B&R undertook those steps, or otherwise would be unable to satisfy a judgment.  Accordingly, I conclude that intervention under Rule 24(a) is not appropriate in this case.

### B.  Permissive Intervention

Nicholson urges the Court to grant permissive intervention, claiming he will "assert claims and defenses sharing common questions of law and fact with those asserted by the original parties."  ECF 33-1 at 23.  In particular, Nicholson states that, if permitted to intervene, he "would seek a determination that the insurance policies in question are valid and enforceable and raise defenses to the rescission claims brought by CXRe."  *Id.*  And, he claims that if he is not permitted to intervene, he would bring a separate action "seeking a declaration that the policies are in force, which CXRe would likely oppose . . . ."  *Id.*  Thus, he argues that the Court can avoid duplication by permitting intervention here.  *Id.*

CX Re asserts: "Here, the two actions involve no overlapping question of law or fact." ECF 42 at 11.  It adds, *id.*: "This action concerns whether the policies are void due to a material misrepresentation on the Application; the underlying [lead exposure] action concerns whether Insureds may be held liable in tort for bodily injuries arising from Nicholson's exposure to lead."

Furthermore, CX Re maintains that permitting Nicholson to intervene "would inevitably result in undue delay" (*id.*) and would "significantly complicate the discovery process," because the defendants in this case are already "vigorously defending CX Re's claims."  *Id.* at 12.  And, CX Re insists that "adding another defendant to the five . . . parties to this action would lead to improvident expense and considerable delay, as Nicholson would have the right to serve separate written discovery requests, notice depositions, issue subpoenas, examine witnesses, file motions, briefs and arguments, retain experts, and lodge objections." *Id.*

Cx Re also states, *id.*:

> Should the Court nevertheless permit intervention, CX Re would ask the Court to impose strict ground rules to ensure an orderly and expeditious process. Specifically, CX Re would ask the Court to forbid Nicholson from (i) serving discovery requests, issuing subpoenas or filing motions, briefs, or arguments that are duplicative of the Insureds', (ii) asking any interrogatory or deposition question that, in words or in substance, is duplicative of any interrogatory or deposition question posed by the Insureds, and (iii) retaining his own experts.

In case JKB-15-3054, Judge Bredar considered whether to grant permissive intervention under Rule 24(b).  In that case, as in this case, the defendants did not oppose permissive intervention, but CX Re did oppose it.  *Id.*, ECF 74 at 3 and *id.* at n.1.  The Court concluded that movants were entitled to permissive intervention.  Judge Bredar reasoned, *id.*, ECF 74 at 4:

> Here, the common question of fact is whether Defendants made material misrepresentations on the application for liability insurance. If so, then CX Re is entitled to rescission. If the policy is rescinded, then neither Defendants nor Movants will benefit from its liability coverage, assuming arguendo that Movants' claims fall within the parameters of the policy. The Court can discern no delay or prejudice occasioned by Movants' intervention (particularly given the

discovery restriction imposed below). Thus, the motions will be granted on this basis, and Movants will intervene as Defendants.

I am persuaded by Judge Bredar's conclusion with respect to intervention under Rule 24(b). Here, the common question is whether defendants made material misrepresentations on the Application. Moreover, any prejudice that CX Re would suffer as a result of permitting Nicholson to intervene can be cured by limiting Nicholson's rights to discovery. Thus, I shall grant the Motion and permit Nicholson to intervene, pursuant to Rule 24(b).

However, I agree with CX Re that Nicholson should not be given *carte blanche* in the discovery process. As Judge Bredar explained, ECF 74 at 4 in JKB-15-3054: "Defendants, through their previously noted active litigation efforts, are driving the defense bus, so to speak. [Intervenors] are effectively passengers on the defense bus and they would only move into the driver's seat if and when Defendants did not continue in their active litigation role."

To ensure an efficient discovery process and to minimize prejudice to CX Re, Judge Bredar limited the intervenors' role in discovery. He stated, *id.*:

> [T]his case will be referred for discovery matters to a magistrate judge, who will rule on any request by [Intervenors] to propound discovery separate from that propounded by Defendants. Thus, [Intervenors] will be forbidden from taking discovery except to the extent they can establish to the satisfaction of the magistrate judge that it will be nonduplicative of what the other parties are already taking and otherwise within the scope of established discovery rules.[]
> *See generally* Fed. R. Civ. P. 26(b)(2)(C)(i).

In my view, the solution fashioned by Judge Bredar is a sound one. It will prevent prejudice to CX Re while protecting Nicholson's discovery rights should the "drivers" of the "defense bus" abandon their interest in the case or otherwise fail to pursue vigorously their defense or defenses to the claims.

## IV.    Conclusion

I shall GRANT Nicholson's Motion to Intervene (ECF 33), pursuant to Fed. R. Civ. P. 24(b).   But, to prevent prejudice to CX Re, I shall limit Nicholson's rights with respect to discovery.   Nicholson will be barred from taking discovery, except to the extent that he can demonstrate, to the satisfaction of the magistrate judge to whom discovery management will be assigned, that the requested discovery will be nonduplicative of discovery other parties are already taking and otherwise within the scope of established discovery rules.   *See generally* Fed. R. Civ. P. 26(b)(2)(C)(i).

An Order consistent with this Memorandum follows.   And, I shall issue a separate discovery order.


Date:   January 26, 2017                               _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge