CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 20, 2017

LETTER TO COUNSEL

RE: *CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v. B&R Management, Inc., et al.;* Civil Case No. ELH-15-3364

Dear Counsel:

Pursuant to Judge Hollander's July 21, 2017 Order, [ECF No. 204], as well as a prior order referring this case to me for discovery, [ECF No. 78], I have reviewed Defendant Jessica-Carl, Inc.'s ("Jessica-Carl's") letter brief in support of its Third Request for Production of Documents (hereinafter "Motion to Compel"), [ECF No. 214], and Plaintiff CX Reinsurance Company Limited's ("CX Re's") letter brief in opposition thereto. [ECF No. 220]. A hearing was held on September 13, 2017. For the reasons set forth below, Jessica-Carl's Motion to Compel is DENIED, contingent upon Cx Re's intended use of certain information relating to the Motion.

I. **Background**

In this action, CX Re seeks to rescind two commercial general liability insurance policies ("Policies") issued to Jessica-Carl, B&R Management, Inc. ("B&R Management"), and other named insureds (collectively "Defendants") in 1997 and 1998. Pl.'s First Am. Compl., [ECF No. 25 at ¶¶ 1 & 11]. The Policies provide insurance coverage for certain risks, including lead exposure, relating to specified residential rental properties in Baltimore, Maryland ("Properties"). *See* Policies, [ECF Nos. 1-2 & 1-3]. CX Re also seeks damages for sums fraudulently "incurred and paid . . . in connection with the adjustment, defense, settlement and satisfaction of judgments in these and other claims and lawsuits under the Policies." Pl.'s First Am. Compl., [ECF No. 25 at ¶¶ 1-2 & 34-37].

In particular, CX Re alleges that Defendants made misrepresentations of material fact in the Application upon which the Policies were issued. *Id.* at ¶¶ 1 & 24. In its First Amended Complaint, CX Re avers that Defendants falsely answered "No" to Question 16 of the Application, which asks whether "the insured ever had any lead paint violations in the building(s)[.]" *Id.* at ¶¶ 25-26. Application, [ECF No. 1-4]. CX Re argues that if Defendants had answered this question truthfully, CX Re would not have issued the Policies or would have issued the Policies subject to substantially higher premiums or substantially different terms. *Id.* at ¶ 41. CX Re asserts that it first learned of the misrepresentation regarding Question 16 of the Application while conducting "a broad underwriting review of many insureds[]" in August 2015,

CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.
B&R Management, Inc., et al.
Civil No. ELH-15-3364
September 20, 2017
Page 2

and filed this action shortly thereafter in November, 2015. *Id.* at ¶¶ 27-28.

Precipitating the instant discovery dispute are new allegations of material misrepresentations raised in CX Re's Proposed Second Amended Complaint. *See* Pl.'s Second Am. Compl., [ECF No. 189-1]. CX Re contends that, in addition to Question 16, Defendants also provided false and misleading answers to Questions 12 and 14, denying that there was "any lead paint on any interior or exterior surface of the building[,]" or "any paint chipping or flaking, or otherwise coming off any interior or exterior surface of the building[,]" respectively. *Id.* at ¶ 44. Application, [ECF No. 1-4]. CX Re alleges that it first learned of these additional misrepresentations in May, 2017 while conducting discovery for the instant case. Pl.'s Second Am. Compl., [ECF No. 189-1 at ¶ 67]. Jessica-Carl's Third Request for Production of Documents seeks information relating to the above new issues, and CX Re objects to these Requests. *See* [ECF Nos. 214, 220].

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III. Discussion

Jessica-Carl requests that CX Re provide all documents regarding a lead paint lawsuit filed by Tyrell Stokes a/k/a Tyshell Stokes ("Stokes Claim") against Arbor, Inc., a named insured under the Policies, in the possession, custody, and/or control of Pro Insurance Solutions Limited ("Pro UK") ("Request No. 1") and CX Re ("Request No. 2"). *See* [ECF No. 214-1, 3]. In the Stokes Claim, Ms. Stokes alleged injury from exposure to chipping, flaking, and peeling paint at 2308 E. North Avenue, an insured property under the Policy where she resided from 1998 to 2000. *See* Def.'s Mot., [ECF No. 214, 1 & 3]. The Stokes Claim settled for $710,000 in 2012. *See id.* at 1. Jessica-Carl argues that documents concerning the Stokes Claim will demonstrate that B&R Management's answers to Questions 12 and 14 on the Application were false and, as such, that CX Re was "on inquiry notice of claims for rescission or for fraud more than three years before it filed its Complaint." *Id.* at 2. As such, "the documents sought will demonstrate, conclusively, that CX Re's claims in this case are barred by limitations and laches." *Id.* at 1. CX Re objects to both of Jessica-Carl's Requests on the basis of relevance "and to Request No. 1 because Pro UK's documents are outside of CX Re's possession, custody, and control." Pl.'s Opp., [ECF No. 220, 2].

For the reasons set forth below, documents regarding the Stokes Claim are not relevant to Jessica-Carl's affirmative defenses of limitations and laches, and thus need not be produced by

CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.
B&R Management, Inc., et al.
Civil No. ELH-15-3364
September 20, 2017
Page 3

CX Re on these grounds. At the hearing, however, CX Re confirmed that it may be seeking damages for the $710,000 it expended to settle the Stokes Claim. This parallels CX Re's Complaint, stating that it is seeking damages for sums fraudulently "incurred and paid ... in connection with ... settlement[s] under the Policies." Pl.'s First Am. Compl., [ECF No. 25 at ¶¶ 1-2 & 34-37]. I find that, to the extent CX Re intends to use the Stokes Claim to prove either liability or damages, the requested documents are relevant and must be produced.

### A. Relevance of the Stokes Claim Documents to Jessica-Carl's Affirmative Defenses

The parties disagree over whether post-Application evidence of lead paint at 2308 E. North Avenue triggered accrual of CX Re's rescission and fraud claims. Jessica-Carl argues that CX Re had actual knowledge in 2012 of sufficient suspicious information that B&R Management's answers to Questions 12 and 14 could potentially support a claim for rescission or fraud based on the following: allegations that there was chipping, flaking, and peeling paint on all of the windowsills and frames of the property at the inception of Ms. Stokes's tenancy in 1998; evidence that Ms. Stokes's blood lead levels increased during her period of tenancy; and the fact that the property was built decades before lead paint was banned in Baltimore in 1951. Def.'s Mot., [ECF No. 214, 3-4]. *See* Def.'s Opp. to Pl.'s Second Am. Compl., [ECF No. 189, 14]. CX Re, on the other hand, argues that the Stokes Claim did not present an extraordinary situation triggering a duty to investigate. Pl.'s Opp., [ECF No. 220, 4]. Specifically, CX Re avers that the Stokes Claim is irrelevant to Jessica-Carl's affirmative defenses because the documents and information contained therein do not establish that B&R Management's answers to Question 12, Question 14, or Question 16 were false at the time it submitted the Application in 1997. *Id.* at 2-3.

"Maryland law imposes a heavy burden on applicants to provide correct information on their application," *Clemons v. Am. Cas. Co.*, 841 F. Supp. 160, 167 (D. Md. 1993), and, consequently, insurers like CX Re generally "do not have a duty to investigate insurance applicants and are entitled to believe what an applicant claims to be true." *N. Am. Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 731 (D. Md. 1997) (citing *Clemons*, 841 F. Supp. at 167). Nevertheless, a duty to investigate can arise in "extraordinary circumstances." *Encompass Home and Auto Ins. Co. v. Harris*, 2013 WL 6095496, at *6 (D. Md. Nov. 19, 2013) (citing *N. Am. Specialty Ins. Co.*, 977 F. Supp. at 731). Extraordinary circumstances exist when the insurer is "'on notice that some type of investigation is necessary' because 'a considerable amount of suspicious information' is presented to the insured." *N. Am. Specialty Ins. Co.*, 977 F. Supp. at 731 (quoting *Clemons*, 841 F. Supp. at 167). Moreover, notice in this context requires actual knowledge. *CX Re v. Leader Realty, Co.*, __ F. Supp. 3d. __, 2017 WL 2001987, at *3 (D. Md. May 12, 2017) (citing *Poffenberger v. Risser*, 290 Md. 631, 636 (1981); *Clemons*, 841 F. Supp. at 167.

While post-Application evidence may give rise to an "extraordinary situation" triggering an insurer's responsibility to investigate a potential claim for rescission, the relevant case law indicates that the circumstances in question must unambiguously reveal or very clearly support a

CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.
B&R Management, Inc., et al.
Civil No. ELH-15-3364
September 20, 2017
Page 4

material misrepresentation in order to do so. *See, e.g., Chawla v. Transamerica Occidental Life Ins. Co.*, 440 F.3d 639 (4th Cir. 2006) (insurer had actual knowledge that life insurance applicant was elderly, "had a slow-growing tumor on his brain, . . . drank a bottle of wine every day . . . [and had an unexplained] fresh, four-to-five inch surgical scar on [his] abdomen"); *Encompass Home and Auto Ins. Co. v. Harris*, 2013 WL 6095496 (D. Md. Nov. 19, 2013) (insurer had actual knowledge of applicant's failure to provide information deemed material to a decision whether to issue the policy); *Progressive Casualty Insurance Co. v. Ehrhardt*, 69 Md. App. 431, 518 A.2d 151 (1986) (insurer had actual knowledge of the date of the car crash when it received the backdated claim); *Medical Mutual Liability Insurance Soc. v. Miller*, 52 Md. App. 602, 451 A.2d 930 (1982) (insurer had actual knowledge that one consent form was signed while patient was under sedation and that on another her signature was forged by the doctor). *See also Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547 (D. Md. 2001) (finding insurer had no duty to investigate where circumstances did not "clearly indicate" material misrepresentation). Against that standard, the allegations and reasonable inferences that can be drawn from the Stokes Claim do not clearly show that the answers to Question 12 and Question 14 were false at the time B&R Management submitted the Application. As CX Re notes, there are several ways in which B&R Management could have truthfully answered "No" to Question 12 and Question 14 at the time of the Application, even if CX Re believed the allegations raised in the Stokes Claim to be true or, in any event, to warrant settlement. *See* Pl.'s Opp., [ECF No. 220, 3-4]. Lead paint encapsulation, in particular, offers one such plausible explanation, if the flaking and chipping began between the Application and the start of Ms. Stokes's tenancy. *See* Pl.'s Opp., [ECF No. 220, 3-4]. Again, "the relevant trigger for rescission is when a plaintiff learns of '[] facts that would *justify* rescission,' not merely 'facts that raise the mere potentiality for rescission.'" Charter Oak Fire Ins. Co. v. Am. Capital, Ltd., No. CIV.A. DKC 09-0100, 2011 WL 3511039, at *4 (D. Md. Aug. 9, 2011) (citations omitted). Although evidence relating to the Stokes Claim may have raised the specter of rescission, the general rule outlined above entitled CX Re to rely on the veracity of the answers contained in the Application so long as the information learned did not clearly prove otherwise. Since information relating to the Stokes Claim does not establish that B&R Management's answers to Question 12 and Question 14 were false at the time of the Application, these documents are not relevant to Jessica-Carl's defenses of limitations and laches. Accordingly, Jessica-Carl's Motion to Compel will be denied.

### B. Relevance of the Stokes Claim Documents if the Stokes Claim is Used to Prove Liability and/or Damages

At the hearing on September 13, 2017, Jessica-Carl's counsel introduced a chart that had been used by Cx Re at a prior court proceeding, which used the Stokes Claim to establish that the Application contained false statements to Questions 12 and 14. See Exhibit No. 1. If CX Re intends to use the Stokes Claim to establish liability or to offer evidence of the $710,000 settlement of the Stokes Claim to prove damages, the Stokes Claim documents become relevant and must be produced. Pursuant to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." F.R.C.P. 26(b)(1). Importantly, regarding settlement agreements, "the Fourth Circuit has not imposed a settlement

CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.
B&R Management, Inc., et al.
Civil No. ELH-15-3364
September 20, 2017
Page 5

privilege with respect to discovery. To the contrary, courts in this circuit have found that 'relevance not admissibility, is the appropriate inquiry with regard to whether or not the information sought ... is discoverable.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.,* No. CIV. CCB-03-3408, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) (quoting *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997)).

In *Porter Hayden Co.* the defendant sought reimbursement from its insurers for expenditures paid from asbestos settlement trusts to victims of asbestos-related diseases. *Porter Hayden Co.*, 2012 WL 628493, at *1. The Court held that the defendant's prior settlement-related communications with third parties were discoverable because the defendant sought indemnification from its insurers for the payments it made to claimants. *Id.* at *4-5. Thus, producing the documents would permit the insurers "to confirm the factual basis of the claims for which [the defendant] contends the [i]nsurers must pay." *Id.* at *4. Likewise, in *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2014 WL 4760292 (E.D.N.C. Sept. 24, 2014), the Court held that a prior settlement agreement was discoverable, in part, because it was relevant "to assess Defendants' exposure to possible damages." *Id.* at *3.[1] In *Spilker*, the plaintiff in a wrongful death action reached a confidential settlement agreement with a hospital prior to then suing the defendant medical device manufacturers. *Id.* at *1. The Court stated that, "'faced with a substantial damages suit,'" the defendants' "'ability realistically to evaluate the plaintiffs' case against it depend[ed] upon an awareness of the terms and conditions of the settlement.'" *Id.* at *4 (quoting *Selective Way Ins. Co.*, 2014 WL 462807, at *2; *Bennett v. La Pere*, 112 F.R.D. 136, 141 (D.R.I. 1986)).

As discussed above, Jessica-Carl seeks "any and all documents" regarding the Stokes Claim, including communications "in connection with the negotiation and or settlement of the [] claim," in the possession, custody or control of either Cx Re or Pro UK. [ECF No. 214-1, 3]. By using the Stokes Claim to prove either liability or damages, Cx Re renders moot its objections that Jessica-Carl's document requests are not relevant and/or "are overbroad." Pl.'s Opp., [ECF No. 220, 2, 5]. Analogous to *Porter Hayden Co.*, Cx Re seeks damages for sums "incurred and paid ... in connection with . . . settlement[s] under the Policies." Pl.'s First Am. Compl., [ECF No. 25 at ¶¶ 1-2 & 34-37]. Thus, should Cx Re place the Stokes Claim directly in issue (by seeking reimbursement for the $710,000 expended to dispose of the case) then Jessica-Carl is entitled to review the documents to: (1) "confirm the factual basis of the claims for which" Cx Re contends Jessica-Carl must pay; and (2) assess its "exposure to possible damages." *Porter Hayden Co.*, 2012 WL 628493, at *4; *Spilker*, 2014 WL 4760292, at *3. In short, to properly evaluate the legitimacy of the damages sought, Jessica-Carl is entitled to documents relating to Pro UK and Cx Re's factual and/or legal basis for settling the Stokes Claim.

Finally, to the extent that Cx Re contends it is not in possession of the Stokes Claim

---

[1] *See also Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662, 664 (E.D. Tex. 2010) (holding that a patentee's prior settlement communications were "relevant to explain the settlement agreements and shed light on whether the settlement agreements accurately reflect[ed]" its damages).

CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.
B&R Management, Inc., et al.
Civil No. ELH-15-3364
September 20, 2017
Page 6

documents, and is without the "practical ability" to obtain them from Pro UK, Pl.'s Opp., [ECF No. 220, 5], Cx Re will be prohibited from introducing any evidence regarding the Stokes Claim to prove liability or damages. If Cx Re is to use the Stokes Claim, the documents within the possession of Pro UK become relevant because Pro UK had the responsibility of "identifying or analyzing possible rescission claims based on misrepresentations made on insurance applications" and possessed the authority to settle such claims. Aff. of Marvin Mohn & Stephen McFeely, [ECF No. 198-8, 9]. Put simply, Cx Re may not shield full production by arguing it lacks the "practical ability" to produce these documents while simultaneously producing only the portions it believes sufficient to demonstrate liability or its damages. Such selective production would prejudice Jessica-Carl's right to probe the veracity of Cx Re's claim(s) – "[i]t flies in the face of fairness to allow [Cx Re] to escape certain parts of [production] that may be damaging while using other parts . . . to bolster [its] claim." *See Shaffer v. ACS Gov't Servs., Inc.*, 454 F. Supp. 2d 330, 338 (D. Md. 2006) (also stating that the plaintiff was attempting to use the defendant's "Rule 30(b)(6) designation as both a sword and a shield."). Further, this Court does not find credible Cx Re's argument that it lacks the "practical ability" to obtain the documents from Pro UK. Despite its assertion that Pro UK is now "a separate corporate entity not affiliated with Cx Re," Pl.'s Opp., [ECF No. 220, 5], Cx Re presumably remains contractually or otherwise entitled to the documents that Pro UK relied upon to settle the Stokes Claim on Cx Re's behalf. Cx Re cannot have logically delegated its settlement authority to Pro UK with no right to: (a) access the documents relied upon by Pro UK; and/or (b) review the bases for settlement. As such, if Cx Re intends to rely upon the Stokes Claim to prove liability or damages, it must produce all of the Stokes Claim documents requested, including those within the possession of Pro UK.

## IV. Conclusion

For the reasons discussed above, Jessica-Carl's Motion to Compel, [ECF No. 214], is DENIED. To the extent that Cx Re intends to use the Stokes Claim to prove either liability or damages, however, it must produce the requested documents.

Despite the informal nature of this letter, it will be flagged as an Opinion and docketed as an Order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

## B&R UNDERLYING LEAD PAINT COMPLAINTS

| PROPERTY | INSURED OWNER | ALLEGED RESIDENCY | CHIPPING, FLAKING, PEELING PAINT | PLAINTIFF & CASE NO. | ALLEGATIONS PRE OR POST DATE APP. SIGNING |
|---|---|---|---|---|---|
| 1813 W. Mosher St. | Jessica-Carl, Nancy Oring, B&R Management, Burton King, Renee King, Alvin Lapidus | 1999-2000 | Yes | Sean Nicholson 24-C-16-004070 | Post App. |
| 1813 W. Mosher St. | Lois Lapidus, Nancy Oring, Jessica-Carl | 1990-1995 | Yes | Jamal David Lake 24-C-11-003705 | Pre App. |
| 1804 W. Mosher St. | Jessica-Carl, Nancy Oring | 1990-1997 | Yes | Latesha Small | Pre and Post App. |
| 2308 E. North Ave. | Arbor Inc. | 1999 | Yes | Tyrell & Tyshell Stokes 24-C-09-001847 | Post App. |
| 2308 E. North Ave. | Arbor Inc. | 1999-2001 | Yes | Daniel Heggie Jr. 15-CV-01674 | Post App. |
| 2306 E. North Ave. | Jessica-Carl, Nancy Oring | 1991 | Yes | Darnell Harris 24-C-11-007031 | Pre App. |
| 54 Gorman Ave. | Jessica-Carl, Alvin Lapidus | 1995-1998 | Yes | Pernell Williams 24-C-11-003318 | Pre and Post App. |
| 54 Gorman Ave. | Jessica-Carl, et al. | 1985-1995 | Yes | Genice Dashiell 24-C-99-001751 | Pre App. |
| 2634 Park Heights Terrace | KSS Associates, LLC, Burton King, Renee King, Harvey Siegel, Marilyn Siegel, Frederick Silberg, Illene Silberg | 1995-1998 | Yes | Akiera Jones 24-C-15-006643 | Pre and Post App. |
| 4819 Palmer Ave. | Nancy Oring | 1997-1998 | Yes | Kevin Mills 24-C-14-003393 | Pre and Post App. |
| 803 McCabe Ave. | Harvey Siegel, Marilyn Siegel | 1998-1999 | Yes | Janell Brown 24-C-13-006445 | Post App. |
| 2704 Boone St. | Alvin Lapidus, Jessica-Carl | 1992-1999 | Yes | Corey Jones 24-C-11-005631 | Pre and Post App. |
| 3825 Beehler Ave. | Alvin Lapidus, Lois Lapidus, Norman Libowitz, Maxine Libowitz, Arbor, Inc., Mac Libowitz, Jessica-Carl Nancy Oring | 1988-1995 | Yes | Timothy Smith 24-C-08-007737 | Pre App. |

DEFENDANT'S EXHIBIT NO. 9

CASE NO.: ELH 15-cv-3364

IDENTIFICATION: _____

ADMITTED: _____

EXHIBIT 20

Jessica-Carl Property