IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CX REINSURANCE COMPANY LIMITED
*Plaintiff*,

v.

B&R MANAGEMENT, et al.
*Defendants.*

Civil Action No. ELH-15-3364

## MEMORANDUM OPINION

This Memorandum Opinion resolves the "Motion For Leave to File Second Amended Complaint" (ECF 189, "Motion") filed by plaintiff CX Reinsurance Company Limited ("CX Re"). In the Motion, plaintiff seeks to add multiple defendants and new grounds to rescind certain insurance policies. ECF 189, ¶¶ 20-33. In addition, the Memorandum Opinion resolves a motion for preliminary injunction (ECF 88) filed by defendant Jessica-Carl, Inc. ("Jessica-Carl").

Suit was initiated by CX Re in November 2015 against B&R Management, Inc. ("B&R"), seeking to rescind two commercial general liability insurance policies that were in effect from August 1, 1997 to August 1, 1999. ECF 1 (Complaint). According to CX Re, defendant made misrepresentations concerning lead paint violations with respect to certain rental housing covered by the insurance policies. ECF 1; ECF 1-2 and ECF 189-3 (Policy No. CNAGL1106-97); ECF 1-3 and ECF 189-4 (Policy No. CNAGL1240-98).

At the outset of the litigation, Jessica-Carl moved to intervene as a defendant. ECF 4. That motion was granted. ECF 7.

In a First Amended Complaint filed in June 2016 (ECF 25), plaintiff added defendants Jessica-Carl; Arbor, Inc. ("Arbor"); Burton King ("Mr. King"); and Alfred Slattery. In August

2016, Sean Nicholson, a plaintiff in lead paint litigation in the Circuit Court for Baltimore City, sought to intervene as a defendant. ECF 33. That motion was also granted. ECF 76.[1]

The Motion was filed in June 2017. Along with the Motion, CX Re submitted its proposed Second Amended Complaint (ECF 189-1) and numerous exhibits. *See* ECF 189-2 through ECF 189-8. Jessica-Carl opposes the Motion (ECF 198), supported by multiple exhibits. *See* ECF 198-1 through ECF 198-13. B&R also opposes the Motion (ECF 209) and adopts the reasoning in the oppositions filed by its codefendants. (ECF 198 and ECF 209 shall be referred to collectively as "Opposition").[2] CX Re has replied. ECF 223 ("Reply").

On April 4, 2017, Jessica-Carl filed a "Motion for Temporary Restraining Order, and Preliminary Injunction." ECF 88. It is supported by a memorandum (ECF 88-1) (collectively, "P.I. Motion"), and many exhibits. *See* ECF 88-3 through ECF 88-13. CX Re opposed Jessica-Carl's P.I. Motion (ECF 114) and Jessica-Carl replied. ECF 130.

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny plaintiff's Motion with respect to new claims and new defendants. But, I shall permit amendment on a limited basis, to correct minor factual errors and to remove Mr. King and Slattery as defendants. And, I shall deny, as moot, Jessica-Carl's P.I. Motion.

## I.    Factual and Procedural Background

CX Re, formerly CNA Reinsurance Company Limited, is an insurer organized under the laws of the United Kingdom, with its principal place of business in London. ECF 25, ¶ 3. B&R

---

[1] Nicholson was dismissed from the case in October 2017. *See* ECF 233 (Stipulation of Dismissal); ECF 234 (Order of October 20, 2017).

[2] Nicholson filed an opposition to the Motion. ECF 213. He was dismissed from the case after the Motion became ripe. *See* ECF 234.

is a Maryland corporation in the business of owning and managing rental housing in the Baltimore area. *Id.* ¶ 4.

In 1997, B&R submitted a "Commercial General Liability Application" to CNA on behalf of B&R, as well as a "Supplemental Application-Habitational Risks" (collectively, the "Application"). *Id.* ¶¶ 17, 18; *see* ECF 1-4; ECF 189-5. The Application identified Jessica-Carl, Inc.; Arbor, Inc.; KSS LLC; and B&R as named insureds. ECF 1-4 at 2 and ECF 189-5 at 2 (Application Questions); ECF 25, ¶ 19. Additionally, the Application pertained to multiple addresses, including 3215 Baker Street, 54 North Gorman Avenue, and 2308 E. North Avenue. ECF 189-5 at 3.[3]

Question 16 of the Application asked: "Has the insured ever had any lead paint violations in the building(s)?" ECF 25, ¶ 20; *see also* ECF 1-4 at 2; ECF 189-5 at 2. On the Application, the box labeled "No" was checked. ECF 1-4 at 2; ECF 189-5 at 2; *see also* ECF 25, ¶ 20. In addition, the Application stated, in capital letters: "BY SIGNING THIS SUPPLEMENTAL APPLICATION THE INSURED ACKNOWLEDGES THAT THE INSURED UNDERSTANDS THAT [CX Re] IS RELYING ON THE INFORMATION PROVIDED, AND THE ANSWERS TO THE QUESTIONS ASKED, IN DECIDING WHETHER TO ISSUE A POLICY OF INSURANCE TO THE INSURED." *See* ECF 1-4 at 2. On July 3, 1997, Slattery signed the Application as the "Producer," and on July 18, 1997, Mr. King signed the Application as the "Insured." *See id.*; *see also* ECF 25, ¶¶ 21-22.[4]

---

[3] With its initial Complaint (ECF 1), CX Re submitted only one page from the Application (ECF 1-4), which did not include a list of properties for which coverage was sought. *See* ECF 1-4. With its Motion (ECF 189), CX Re filed two additional pages from the Application. *See* ECF 189-5 at 3-4. These pages contain a list that includes the properties at Baker Street, North Gorman Avenue, and E. North Avenue.

[4] In its First Amended Complaint (ECF 25, ¶ 23), and proposed Second Amended Complaint (ECF 189-1, ¶ 40) CX Re states that Mr. King signed the application on July 10,

CX Re issued Policy No. CNAGL1106-97 to B&R for the period of August 1, 1997 to August 1, 1998, "in reliance on the representations made in the Application . . . ." ECF 25, ¶¶ 11, 24; *see* ECF 1-2. The policy was subsequently renewed for the period from August 1, 1998 to August 1, 1999, as Policy No. CNAGL1240-98. ECF 25, ¶ 11; *see* ECF 1-3 (collectively, the "Policies"). The Policies "provide commercial general liability coverage to B&R Management" and "insure B&R Management for certain risks in connection with specified residential buildings at numerous locations in Baltimore, Maryland." ECF 25, ¶¶ 12, 13. The Policies also contain an endorsement entitled "Schedule of Named Insureds", naming, *inter alia*, Jessica-Carl; B&R; Arbor; KSS Associates, LLC; Renee King; Mr. King; Eileen Silberg; Nancy Cohen; Mark Libowitz; Nancy Oring; Alvin Lapidus; Mark Lapidus; and Lois Lapidus. ECF 189-3 at 4; ECF 189-4 at 5; ECF 25, ¶ 14. The Policies also contain an endorsement entitled "Schedule of Locations" that includes the Baker Street, North Gorman Avenue, and E. North Avenue properties. ECF 189-4 at 6-7; *see also* ECF 25, ¶ 15.

As noted, CX Re filed suit against B&R in November 2015. ECF 1. The Court's Scheduling Order of March 23, 2016 (ECF 18) set a deadline of May 23, 2016, for joinder of additional parties and amendment of pleadings. *Id.* at 1. The Scheduling Order was subsequently amended three times, at the joint request of the parties (ECF 38, ECF 64, ECF 79), in order to extend discovery deadlines. *See* ECF 39; ECF 65; ECF 80. Notably, the deadline for motions to join parties and to amend the pleadings was never extended. *See* Docket.

In May 2016, CX Re timely moved to file the First Amended Complaint. ECF 22. I granted that motion by Order of June 13, 2016. ECF 24. As indicated, the First Amended

---

1997. A review of the Application suggests it is dated July 18, 1997. *See* ECF 1-4 at 2. The discrepancy is of no significance.

Complaint (ECF 25) added additional insureds as defendants: Jessica-Carl; Arbor; Mr. King; and Slattery.

In its First Amended Complaint, CX Re contends that "B&R Management's answer to Question 16 [on the Application] was false and misleading because, prior to July 1997," the Baltimore City Health Department ("BCHD") "had cited B&R Management for a lead paint violation in a building included on the Policies' Schedule of Locations." ECF 25, ¶ 25. In particular, CX Re points to the "Emergency Violation Notice and Order to Remove Lead Nuisance" issued by the BCHD on July 26, 1996, concerning the property at 3215 Baker Street. *Id.*; *see* ECF 25-2 (Violation # 3653, "Baker Violation"). The Baker Street property was included on the endorsement titled "Schedule of Locations." ECF 25, ¶ 15.

The Baker Violation stated, ECF 25-2 at 3:

> It has been determined from elevated blood lead and an investigation by the Baltimore City Health Department that a child who frequents the above dwelling has an abnormal blood lead level. An inspection of this dwelling shows it contains lead based paint.
>
> Such condition has been deemed by the Commissioner of Health to be hazardous to life and health and a public health nuisance.

Further, CX Re alleges that it did not learn of the Baker Violation until August 2015. ECF 25, ¶ 27. CX Re also asserts, *id.* ¶ 26: "The existence of this undisclosed, pre-Application Violation renders the 'No' answer to Question 16 false."

On January 4, 2017, CX Re dismissed its suit as to Mr. King. ECF 66. And, on March 10, 2017, CX Re and B&R reached a "settlement in principle." ECF 189, ¶ 14. Thereafter, on April 4, 2017, Jessica-Carl filed its P.I. Motion (ECF 88), seeking to enjoin CX Re, B&R, and Mr. King from entering into a settlement agreement. Jessica-Carl argued, *inter alia*, that a settlement agreement with B&R and Mr. King would "modify the Policies in order to eviscerate

coverage for the remaining insureds." ECF 88-1 at 2. B&R then "withdrew from discussions to finalize the settlement" (ECF 189, ¶ 15), claiming "efforts to negotiate a settlement of this action proved fruitless." *Id.* ¶ 39. By Order of April 6, 2017 (ECF 94), I determined that CX Re may continue to negotiate with B&R, pending resolution of the P.I. Motion, but could not enter into a final agreement until the Court had an opportunity to address the P.I. Motion.

The Court held a hearing on the P.I. Motion on June 9, 2017. ECF 181; ECF 183; ECF 194 (Hearing Transcript). On the same date, CX Re dismissed its suit as to Slattery. ECF 180.

At the hearing, CX Re informed the Court that "[t]here are no settlement discussions" with B&R, as the settlement discussions "fell apart[.]" ECF 194 at 20, 21. The Court was also advised that CX Re intended to assert two additional grounds for rescission of the Policies. ECF 194 at 3-5. These included alleged false responses to Application Question 12 and Application Question 14, concerning the presence of lead paint on interior and exterior surfaces, as well as chipping or flaking lead paint on those surfaces. *Id.* at 4-5, 12, 14. CX Re explained that it had recently acquired documents pertaining to questions 12 and 14, which "show material misrepresentations" as to "the properties Jessica-Carl owned or managed at . . . 54 Gorman Street." *Id.* at 32.

CX Re explained that it had just had an opportunity to depose Slattery on June 8, 2017, at which it obtained "clear and convincing evidence, which [it] will use to amend [its] complaint." *Id.* at 16. Further, CX Re stated that it "went to the courthouse and . . . got the pleadings [and] . . . depositions" to establish material misrepresentations by Jessica-Carl. *Id.* at 21. Plaintiff's counsel insisted that CX Re had "worked around the clock to get this evidence," after the settlement "fell apart in April," and asserted: "So this is no ambush." *Id.* In light of

plaintiff's request to file a motion to amend its First Amended Complaint, the Court determined to postpone the hearing on the P.I. Motion. ECF 183.

At the hearing, CX Re did not raise the prospect of joinder of additional defendants. *See* ECF 194. That request was presented for the first time in the Motion. *See* ECF 189.

By Order of June 9, 2017 (ECF 183), I reaffirmed that CX Re and B&R may continue settlement negotiations. However, I reiterated that they may not enter into a final settlement agreement until the Court had an opportunity to resolve Jessica-Carl's P.I. Motion. *Id.* at 1.

As indicated, CX Re filed the Motion on June 16, 2017. ECF 189. The proposed Second Amended Complaint (ECF 189-1) does not name Mr. King or Slattery as defendants. *See* ECF 189, ¶¶ 18-19; ECF 189-2 (redlined version), at 1-2. But, it does seek to add eleven new defendants: B&R Properties, Inc.; KSS Associates, LLC; Nancy Cohen; Renee King; Alvin Lapidus; Lois Lapidus; Mark Lapidus; Marc Libowitz; Nancy Oring; Marilyn Siegel; and Ilene Silberg. ECF 189, ¶¶ 20-31; ECF 189-2 at 1-2. The proposed Second Amended Complaint also adds "new allegations" based on several documents that plaintiff claims to have only recently acquired (ECF 189, ¶ 33), one of which (ECF 189-9) pertains to an additional insured property, not previously included in the suit: 54 North Gorman Avenue. *See* ECF 189-8 at 2; ECF 189-9; *see also* ECF 1; ECF 25.

The proposed Second Amended Complaint alleges that B&R misled CX Re by answering "No" to Application Question 12 and Application Question 14. *See* ECF 189-1, ¶¶ 45-50, 51-67; *see also* ECF 189, ¶ 33. As indicated, Question 12 asked: "Is there lead paint on any interior or exterior surface of the building?" ECF 189-1, ¶ 45. Question 14 asked: "Is there any paint chipping or flaking, or otherwise coming off any interior or exterior surface of the building?" ECF 189-1, ¶ 51. In the proposed Second Amended Complaint, CX Re asserts that, as to

questions 12 and 14, it was not until May 2017 that it identified this additional basis for rescission, when it obtained records from the BCHD pursuant to a Freedom of Information Act ("FOIA") request. ECF 189-1, ¶ 67. Further, CX Re claims that in June 2017 it obtained a critical document from a lawsuit filed years ago in the Circuit Court for Baltimore City, *Williams v. Plateau Apartment Inc.*, 24-C-11-3318 (Cir. Ct. Balt. City). *Id.*; *see* ECF 189-8.

In particular, the documents that CX Re alleges it only recently acquired include: (1) a BCHD report from 1996 (ECF 189-6, "BCHD Report"); (2) an affidavit dated June 6, 2017, from Lavetta McCollum, a former employee of Continental Coverage Corporation, a company that underwrote insurance policies for CNA (ECF 189-7, "McCollum Affidavit"); and (3) a Memorandum and Order issued on April 2, 2013, in the *Williams* case. ECF 189-8.[5] *See* ECF 189, ¶ 33; *see also* ECF 189-2 at 7-16. Notably, the *Williams* Opinion discusses lead paint at 54 North Gorman Avenue, a property insured under the Policies (ECF 189-3 at 5; ECF 189-4 at 6), but not included in plaintiff's First Amended Complaint. *See* ECF 25.

## II.     The Motion to Amend

### A.

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or Rule 12(b), (e), or (f) motion, "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing

---

[5] CX Re's Motion (ECF 189, ¶ 33) and proposed Second Amended Complaint (ECF 189-1, ¶ 53) refer to "Exhibit G" in relation to the *Williams* Opinion. According to plaintiff, Exhibit G contains "relevant excerpts from the transcript of Elizabeth Smith's deposition in *Williams*." ECF 189-1, ¶ 53. However, plaintiff has failed to provide the Court with a copy of Exhibit G. And, CX Re failed to identify Elizabeth Smith or explain why her deposition testimony may be relevant to its Motion. However, the *Williams* Opinion indicates that Ms. Smith is the aunt of Pernell Williams, the plaintiff in that case. ECF 189-8 at 6 n.1.

party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the court "should freely give leave when justice so requires." *Id.*

When a party seeks to amend a pleading after the expiration of a deadline set forth in a scheduling order, Rule 16(b)(4) is implicated. Rule 16(b)(4) states that a scheduling order may be modified to amend a pleading "only for good cause and with the judge's consent."

At this juncture, plaintiff must do more than satisfy the liberal standard for amendments set forth in Fed. R. Civ. P. 15(a). CX Re must first meet the requirements of Fed. R. Civ. P. 16(b)(4). "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *see also Cook v. Howard*, 484 F. App'x 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment."); *Humane Soc'y of the United States v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, DKC-13-1822, 2016 WL 3668028, at *2 (D. Md. July 11, 2016) (hereinafter, "*Humane Society*") ("Plaintiffs must do more than satisfy the liberal standard of Fed. R. Civ. P. 15(a); they must first meet the mandates of Fed. R. Civ. P. 16(b)(4) . . . ."); *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 519-20 (D. Md. 2014) (applying a two-prong test under Rules 16(b)(4) and 15(a) in analyzing an untimely motion for leave to amend).

The "burden for demonstrating good cause rests on the moving party." *United States v. Hartford Accident & Indemnity Co.*, JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016). In order to demonstrate good cause, the party seeking relief must "'show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes

that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Cook*, 484 F. App'x at 815 (alterations in *Cook*) (quoting 6A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1522.2 (3d ed.)).

In determining whether the moving party has met its burden to show good cause, courts may consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520 (citing *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010)). If the movant "'was not diligent, the inquiry should end.'" *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (quoting *Marcum*, 163 F.R.D. at 254) (emphasis omitted); *see, e.g.*, *CBX Tech.'s, Inc.*, 2012 WL 3038639, at *4 (denying motion to amend the complaint because the plaintiff's "failure to anticipate" its needs was "of its own doing and not the fault of any other entity"), *aff'd*, 533 F. App'x 182 (4th Cir. 2013).

Of relevance here, when a movant fails to satisfy Rule 16(b), the court need not consider Rule 15(a). In *Nourison*, 535 F.3d at 299, the Court said: "Because we sustain the District Court's application of Rule 16(b), there is no cause for us to address the Court's finding that amendment would be futile, which is a Rule 15(a) consideration." *See also Humane Society*, 2016 WL 3668028, at *6 ("Because Plaintiffs lack good cause for modifying the scheduling order under Rule 16(b), their remaining arguments in support of leave to amend under Rule 15 need not be considered."); *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.").

If the movant shows good cause for modification of the scheduling order, the inquiry shifts to Rule 15(a). Rule 15(a)(2) states: "[A] party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). Under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ." *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc). A district court may deny a motion to amend for reasons "'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth*, 337 F. App'x at 312 (quoting *Foman*, 371 U.S. at 182).

Rule 16(b)(4) may appear at odds with Rule 15(a)(2). In *Nourison*, 535 F.3d at 298, the Fourth Circuit explained:

> There is tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b) . . . . Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001). On the other hand, Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge."
>
> * * *
>
> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16.

With this framework, I turn to analyze the rules as they apply here.

## B.

To reiterate, suit was initiated in November 2015. ECF 1. In June 2017, more than eighteen months after the suit was filed, and almost thirteen months after the deadline for the

filing of an amended suit, as set forth in the Scheduling Order of May 23, 2016 (ECF 18), CX Re filed the Motion.

CX Re contends that, based on documents that were only recently acquired (ECF 189-6; ECF 189-7; ECF 189-8), it has determined that Application Question 12 (ECF 189-1, ¶¶ 45-50) and Application Question 14 (*id.* ¶¶ 51-67) were falsely answered. Moreover, CX Re seeks to introduce allegations as to the property at 54 Gorman Avenue as a basis to rescind the Policies. ECF 189-1, ¶ 31. In addition, plaintiff seeks to add eleven new defendants, suggesting that they are necessary parties because they are named insureds who may claim an interest in the suit. ECF 189, ¶¶ 21-31; ECF 223 at 2, 13.

In its Motion, CX Re addresses only the liberal standard of Rule 15(a) regarding amendments to pleadings. *See, e.g.*, ECF 189, ¶¶ 34-41. However, it failed to address its burden under Rule 16(b). Relying on Rule 15(a), CX Re asserts various grounds for rescission. *Id.* ¶¶ 37-38, 39, 40-41. It also asserts, *id.* ¶¶ 34-36:

> Leave to file an amended complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). . . . "It is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). . . . "The law is well settled 'that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.' Delay alone is an insufficient reason to deny leave to amend. Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) . . . .

In the proposed Second Amended Complaint (ECF 189-1, ¶ 50), CX Re points, *inter alia*, to the McCollum Affidavit dated June 6, 2017 (ECF 189-7) to support the proposition that had Application Question 12 been answered truthfully, its underwriter, the Continental Coverage Corporation, would not have provided National Insurance Services, Inc., a retail insurance broker, "a premium quote for lead paint liability coverage or submitted the Lead Application to

CX Re's London-based wholesale broker." ECF 189-1, ¶ 50; *see* ECF 189, ¶ 36. CX Re does not explain why it could not obtain the McCollum Affidavit before June 2017.

In its Opposition (ECF 198), Jessica-Carl points out, *inter alia*, that "CX Re ignores this Court's Scheduling Order" and that plaintiff did not attempt to demonstrate good cause under Fed. R. Civ. P. 16(b). ECF 198 at 1-2. Additionally, Jessica-Carl argues that CX Re failed to act diligently, and therefore cannot show good cause for a belated amendment. *Id.* at 8-21. Jessica-Carl asserts, *inter alia*, that the facts underlying plaintiff's new allegations were publically available and easily obtainable. *Id.* at 9-11. Moreover, Jessica-Carl asserts that well before CX Re sought leave to amend the First Amended Complaint, it either knew or had reason to know about the allegations it now seeks to introduce. *Id.* at 12-17, 20.

CX Re addresses Rule 16(b)(4) for the first time in its Reply. *See* ECF 223. It maintains that it has good cause under Rule 16 because "it was not until March 28, 2017, that CX Re first had reason to join all" of the new defendants to this lawsuit, and because it "first learned of the new facts supporting its rescission claim in late May 2017." *Id.* at 2. And, CX Re argues that, even if it knew or should have known about the facts it now seeks to add in support of the new allegations, it acted diligently because "'the mere possession of information in the company's files'" does not necessarily justify rescission of an insurance contract. *Id.* at 7 (quoting *Endurance Am. Specialty Ins. Co. v. Cohen*, TJC-10-14421, 2012 Bankr. LEXIS 3729, at *4 (Bankr. D. Md. Aug. 14, 2012)).

As noted, when "the deadlines provided by a scheduling order have passed, the good cause standard" applicable to modifications of scheduling orders under Fed. R. Civ. P. 16(b)(4) "must be satisfied to justify leave to amend the pleadings." *Nourison*, 535 F.3d at 298; *see also*

*Cook*, 484 F. App'x at 814-15. In analyzing the issues here, the case of *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618 (D. Md. 2003) ("*Odyssey*"), is informative.

In *Odyssey*, just one week beyond the deadline for joinder as set forth in the scheduling order, the plaintiff filed a conditional motion for leave to file an amended complaint, seeking to add two defendants in the event that the court granted the defendant's pending summary judgment motion. *Id.* at 630-31. The only explanation offered by the plaintiff for the out-of-time filing was that the plaintiff's counsel had "'overlooked'" the schedule. *Id.* at 632. In light of the court's denial of the defendant's summary judgment motion, Judge Chasanow denied as moot the request for leave to amend. But, she noted that she would not "have allowed" plaintiff to amend the complaint to add new parties under Rule 16(b) "at this late date . . . ." *Id.* at 631.

Judge Chasanow explained: "Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" *Id.* at 632 (quoting *West Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W. Va. 2001)). She added, 262 F. Supp. 2d at 632: "The tardiness is particularly egregious given that [the plaintiff] was put on notice as early as January 2002 that [the defendant] would assert that [another entity] was the proper defendant in the case." *See also Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013) (stating that "'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief'") (quoting *CBX Tech.'s, Inc.*, 2012 WL 3038639, at *4); *Sharkey IRO/IRA v. Franklin Resources*, 263 F.R.D. 298, 301 (D. Md. 2009) (concluding that "undue delay [in the filing of a motion to amend] may exist when there is no reasonable justification for a delay between the moving party becoming aware of the need to alter the complaint and the actual filing of the motion to amend").

Judge Chasanow's decision in *Humane Society*, 2016 WL 3668028, is also instructive. There, the plaintiffs filed suit against their insurer for failure to provide coverage. *Id.* at *1. Notably, the plaintiffs sought leave to amend the complaint nearly two months after the deadline in the scheduling order. *Id.* But, the motion to amend failed to address the burden imposed under Rule 16(b). *Id.* at *4. Rather, the plaintiffs addressed Rule 16(b) for the first time in their Reply.

The court noted, *inter alia*, that because the plaintiffs' "contentions appear for the first time in their reply brief, the court is inclined not to consider them." *Id.* (citing *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006)) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."). The court observed that the failure to address Rule 16(b) in the motion to amend was "a sign of a lack of diligence—without which the court is hard-pressed to conclude that good cause exists to modify the scheduling order." *Id.* (citing *Rassoull*, 209 F.R.D. at 374).

The court emphasized that the plaintiffs' *motion* "must demonstrate that the reasons for their delay justify a departure from the rules set by the court in the scheduling order." *Id.* at *4. The court noted that the deadline to amend a pleading had not been extended, the facts underlying the plaintiffs' motion to amend were long known to the plaintiffs, and yet the plaintiffs sought leave to amend approximately two months after the deadline to do so. *Id.* at *5. Accordingly, the court denied the motion to amend because the plaintiffs failed to establish good cause for modification of the scheduling order under Rule 16(b). *Id.* at *6.

Even assuming that the Rule 16(b) argument was timely raised, plaintiff has not established good cause for the belated addition of new defendants, and new grounds for rescission relating to a new property to the suit, located at 54 North Gorman Avenue.

CX Re points to the *Williams* Opinion to justify its belated proposed amended suit, claiming it "shows that there was peeling and flaking paint on interior and exterior surfaces of the building located at 54 North Gorman Avenue between 1995 and 1998." ECF 189-1, ¶ 53. According to the Maryland Judiciary website, the suit was filed on May 10, 2011.[6] The plaintiff in that suit, Pernell Williams, named Jessica-Carl as a defendant that "owned, controlled, or managed" the 54 North Gorman Avenue property. ECF 189-9 at 2. Williams alleged that he had been injured from exposure to lead paint while residing at 54 North Gorman Avenue between 1995 and 1998. *Id.* Notably, 54 North Gorman Avenue is among the properties insured by the Policies at issue in this case. ECF 189-3 at 5; ECF 189-4 at 6. However, CX Re did not include that property in its First Amended Complaint. ECF 25.

The *Williams* Opinion filed by CX Re appears to be dated April 2, 2013. *See* ECF 189-8 at 16. And, as early as October 5, 2016, counsel for plaintiff knew about Williams's lead paint claim pertaining to 54 North Gorman Avenue. On that date, counsel for CX Re sent an email to counsel for Jessica-Carl. *See* ECF 198-4 (email dated October 5, 2016, from Hilary Matzinger to Ira Oring) at 2. Attached to the email was a document titled "Policy Experience," which catalogues lawsuits involving CX Re insured properties. ECF 198-4 at 3-6 (Policy Experience

---

[6] *See* Circuit Court of Maryland Case Search (last visited Dec. 11, 2017), http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=24C11003318&loc=69 &detailLoc=CC. A "court may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

document). The Policy Experience document includes the *Williams* case. *Id.* at 4. Accordingly, by at least October 5, 2016, CX Re either knew, or had reason to know, about the *Williams* case. And, it appears that CX Re actually knew about the *Williams* case as early as 2011. *Id.*

Additionally, CX Re asserts that the 1996 BCHD Report (ECF 189-6) was only recently uncovered (ECF 189, ¶ 33), and that it shows B&R falsely answered Application questions 12 and 14. ECF 189-1, ¶¶ 46, 52. However, the 1996 BCHD Report bears striking similarities to the "Emergency Violation Notice and Order to Remove Lead Nuisance" that plaintiff claims to have discovered in August 2015. *See* ECF 189-1, ¶ 65; ECF 25, ¶ 25; ECF 25-2; ECF 189-6. Both documents were generated by the BCHD in 1996; both concerned lead paint contamination at 3215 Baker Street; and both involved Violation # 3653. ECF 25, ¶ 25; ECF 25-2; ECF 189, ¶ 33; ECF 189-6. Plaintiff filed a FOIA request for the BCHC Report approximately one year after the deadline to amend pleadings (ECF 223 at 5; ECF 189-1, ¶ 67), and approximately 18 months after it referred to the BCHD's "Emergency Violation Notice and Order to Remove Lead Nuisance" in its Complaint. ECF 1, ¶ 21. But, it offers no explanation for its failure to have made such a request at an earlier time.

As noted, CX Re gave notice of its intention to amend during the P.I. Motion hearing on June 9, 2017. ECF 194. That hearing was held about two months after CX Re obtained the 1996 BCHD Report and the *Williams* Opinion. ECF 189, ¶ 33. But, the *Williams* Opinion was issued in 2013 and was readily available to the public. *See CBX Tech.'s, Inc.*, 2012 WL 3038639, at *1, *4 (denying the plaintiff's motion to amend for failure to demonstrate good cause because the basis for plaintiff's amendment was, *inter alia*, "a matter of public record in April 2010, well before the [August 2, 2010] filing of the complaint").

And, in its Opposition, Jessica-Carl points out that additional documents and events put CX Re on notice of potential misrepresentations related to Application questions 12 and 14 before the deadline to amend pleadings. It discusses, *inter alia*, two cases: *CX Re v. Heggie*, ELH-15-1674 (ECF 198 at 12), filed in federal court, and *Tyrell and Tyshell Stokes v. Brown, et al.*, filed in the Circuit Court for Baltimore City in 2009. ECF 198-5. I turn to review those cases, to the extent relevant.

In March 2009, Tyshell Stokes, through her mother, Juanita Stokes, filed suit in the Circuit Court for Baltimore City against multiple defendants, including Arbor, an entity that plaintiff seeks to add as a defendant in this case. ECF 198-5 at 2-5. In the complaint, the plaintiffs alleged injuries from chipping and flaking lead paint at 2308 E. North Avenue, as well as the presence of lead paint on the "interior and exterior walls, doors, floors, ceilings and woodwork . . . ." *Id.* at 9. The property is among those covered by the Policies. *See* ECF 189-3 at 15. In March 2012, CX Re paid $710,000 to settle the *Stokes* case. *See* ECF 199 at 2, 5. In light of the *Stokes* case and the settlement, Jessica-Carl argues that "CX Re had actual knowledge in 2012 of assertions of the presence of lead in the interior of covered properties (Question 12) and flaking and peeling paint (Question 14)." ECF 198 at 14. Therefore, Jessica-Carl contends that CX Re knew as early as 2012, when the *Stokes* case settled, of allegations that could have formed a basis to challenge those answers in relation to the Policies. *See* ECF 198 at 15.

On November 12, 2013, Daniel Heggie filed suit in the Circuit Court for Baltimore City against, *inter alia*, Arbor. *See* ELH-15-1674, ECF 1-2 at 2-4. Between 1999 and 2001, when Heggie was approximately six and seven years of age, he and his mother, Mary Bollinger, resided at 2308 E. North Avenue. *Id.* at 93-94. As noted, 2308 E. North Avenue is among the

properties covered by the Policies. *See* 189-3 at 5; 189-4 at 7. In his complaint, Heggie alleged that Arbor "caused or allowed the continued existence of paint containing lead pigment on its interior and exterior walls, doors, floors, ceilings and woodwork and knowingly allowed said paint to chip and flake . . . ." *Id.* at 94. On June 9, 2015, CX Re filed suit in this Court seeking a declaratory determination that it did not have an obligation, *inter alia*, to defend or indemnify Arbor against Heggie's lead paint claims. *See* ELH-15-1674, ECF 1. As "Exhibit A" to its Complaint, CX Re filed a copy of the *Heggie* complaint. ELH-15-1674, ECF 1-2. CX Re argued, *inter alia*, that it was not obligated to defend the underlying suit because Heggie had been diagnosed with an unsafe level of lead in his blood after the Policies expired. ELH-15-1674, ECF 1, ¶¶ 28-39. Thereafter, CX Re moved for summary judgment (ELH-15-1674, ECF 43), which the Court granted on October 14, 2016. ELH-15-1674, ECF 47 (Memorandum); *id.*, ECF 49 (Order). According to Jessica-Carl, the *Heggie* case shows that CX Re was aware of chipping and flaking lead paint and the presence of lead paint on the interior and exterior of a covered property before it filed this suit in November 2015. *See* ECF 1.

In its Reply, CX Re argues that the *Stokes* and *Heggie* cases did not put it on notice of false answers to Application questions 12 and 14. ECF 223 at 8. Specifically, CX Re argues that the claims in *Heggie* and *Stokes* would not have justified rescission because the facts averred in those cases amounted to "unsubstantiated allegations" and "not proof." ECF 223 at 8.

Regardless of whether the *Heggie* and *Stokes* cases put CX Re on notice of "proof" necessary for rescission, those cases were listed immediately above and below *Williams* on the Policy Experience document (ECF 198-4 at 4) that counsel for CX Re shared with Jessica-Carl on October 5, 2016. *Id.* at 2. At the very least, the placement of these cases on the Policy

Experience document should have prompted a review of the matters before June 2017. ECF 189-1, ¶ 67

In support of its Motion, CX Re also argues that it "first had reason to join all of the Named Insureds to the lawsuit" on March 28, 2017. ECF 223 at 2. Specifically, CX Re asserts that in a letter dated March 28, 2017 ("Letter"), Jessica-Carl "argued that CX Re had failed to meet 'the fundamental requirement' of rescission by failing to sue all parties with an interest in the Policies." ECF 223 at 13 (quoting ECF 163 at 111). The Letter cited *Lawley v. Northam*, ELH-10-1074, 2011 WL 1327652, at *9 (D. Md. Apr. 5, 2011) (quoting 2 HENRY CAMPBELL BLACK, A TREATISE ON THE RESCISSION OF CONTRACTS & CANCELATION OF WRITTEN INSTRUMENTS §§ 657-58 (1916)). According to CX Re's Reply, the Letter "prompted CX Re to move for leave to join the remaining Named Insureds." ECF 223 at 13.

This argument is also without merit. CX Re has known about each of the Named Insureds it seeks to join since the Policies were issued in 1997. *See* ECF 189-3 at 4; ECF 189 at 1-2. And, to the extent the *Lawley* Memorandum Opinion or the Henry Campbell Black treatise have any relevance, both were in the public domain well before CX Re filed its Motion. Moreover, CX Re has not explained why it waited several months from the time it received the Letter to file its Motion. ECF 163 at 110; ECF 189.

In the context of the Motion, plaintiff was not diligent and lacks good cause to amend the suit more than one year after the deadline to do so. *See* ECF 18. Because CX Re lacks good cause under Rule 16(b), I need not consider its arguments in support of leave to amend under Rule 15. *See Nourison*, 535 F.3d at 299; *Humane Society*, 2016 WL 3668028, at *6; *Marcum*, 163 F.R.D. at 254. But, I conclude that plaintiff has not satisfied the standards of Rule 15(a), given the undue delay in the filing of the Motion and the prejudice to the defendants.

### III.   Motion for Preliminary Injunction

As noted, Jessica-Carl filed a Motion for Preliminary Injunction (ECF 88) to enjoin CX Re, B&R, and Mr. King from entering into a final settlement agreement. *Id.* at 1. CX Re opposed the P.I. Motion (ECF 114) and Jessica-Carl replied. ECF 130. The Court commenced a hearing on June 9, 2017, but resolution of the preliminary injunction motion was deferred so that CX Re could file its Motion. ECF 183 at 1; ECF 181.

I twice instructed the parties (ECF 94; ECF 183) that CX Re and B&R may continue to negotiate pending resolution of the P.I. Motion, so long as they do not enter into a final agreement. *See, e.g.*, ECF 183 at 1. However, B&R withdrew from the settlement discussions and it does not appear that discussions have resumed. ECF 189, ¶¶ 15, 39; ECF 194 at 20, 21. Indeed, CX Re informed the Court that settlement discussions have terminated because B&R "has no interest in settling." ECF 194 at 20-21.

Accordingly, I shall deny, as moot, the P.I. Motion (ECF 88).

### IV.   Conclusion

For the foregoing reasons, I shall deny CX Re's Motion (ECF 189) seeking to add claims and new defendants. However, to the extent CX Re seeks to amend its First Amended Complaint to remove Mr. King and Slattery from the suit (ECF 189-2 at 1-2), to correct minor factual errors (*see, e.g.*, ECF 189-2 at 5, ¶¶ 4-5), and to make non-substantive stylistic changes, the Motion is granted.

Additionally, I shall deny, as moot, Jessica-Carl's Motion for Preliminary Injunction. ECF 88.

An Order follows, consistent with this Memorandum Opinion.

Date:   January 17, 2018                        _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge