CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 3, 2018

LETTER TO COUNSEL

    RE:    *CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v. B&R Management, Inc., et al.;* Civil Case No. ELH-15-3364

Dear Counsel:

    Presently pending is Defendant Jessica-Carl, Inc.'s ("Jessica-Carl") request that this Court delineate the scope of CX Reinsurance Company Limited's ("CX Re") 30(b)(6) deposition. [ECF No. 250]. The issues have been fully briefed [ECF Nos. 250, 251, 252], and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). The permissible scope of CX Re's 30(b)(6) deposition is outlined below.

    The factual background has been recited in prior orders and will not be repeated here. Relevant to the instant dispute, on January 9, 2018, Jessica-Carl wrote the Court regarding the testimonial scope of its 30(b)(6) designee, Alvin Lapidus. [ECF No. 237 at 1]. Specifically, Topics 6, 7, and 9 in CX Re's 30(b)(6) Notice of Deposition to Jessica-Carl seek information relating to "[c]hipping, flaking, or peeling paint" and "lead paint on the surfaces" of insured properties at the time B&R Management ("B&R") submitted the Application. *See* [ECF No. 237-1 ¶¶ 6-7, 9]. As of January 9, 2018, however, CX Re's claim for rescission was based solely upon its allegation that B&R falsely answered "No" to Question 16 of the Application, which asks whether "the insured ever had any lead paint violations in the building(s)[.]" Pl.'s First Am. Compl., [ECF No. 25 ¶¶ 25-26].[1] Pending, though, was CX Re's Motion for Leave to File Second Amended Complaint, [ECF No. 189] together with its proposed Second Amended Complaint, [ECF No. 189-1], which alleged that B&R also falsely answered Questions 12 and 14, denying that there was "any lead paint on any interior or exterior surface of the building[,]" or "any paint chipping or flaking, or otherwise coming off any interior or exterior surface of the building[,]" respectively. [ECF No. 189-1 ¶ 44]; Application, [ECF No. 1-4]. Jessica-Carl argued that Topics 6, 7, and 9 "would only be relevant if the Court granted the Motion to Amend." [ECF No. 237 at 2]. Thus, because Jessica-Carl's objections to Topics 6, 7, and 9 would be mooted if Judge Hollander approved CX Re's Motion to Amend, after a telephone conference on January 11, 2018, the parties agreed to defer the dispute. [ECF No. 239]. On January 17, 2018, Judge Hollander denied CX Re's Motion for Leave to File Second Amended

---

[1] CX Re contends that B&R's answer to Question 16 was false because, on July 25, 1996, the Baltimore City Department of Health cited its property, 3215 Baker Street, Baltimore, Maryland 21216, for a lead paint violation. Pl.'s First Am. Compl., [ECF No. 25 ¶ 25, 25-2].

Complaint, to the extent it sought to add additional claims, [ECF No. 240 at 21], thus leaving CX Re's rescission claim based solely upon the allegation that B&R falsely claimed that it had never received a lead paint violation. *See* Second Am. Compl., [ECF No. 244]. In addition to now determining the relevance of Topics 6, 7, and 9, Jessica-Carl also objects to Topic 10, which seeks information regarding the "factual bases for each of Jessica-Carl's affirmative defenses." [ECF No. 237-1 ¶ 10].

## I. Topics 6, 7, and 9

Jessica-Carl objects to Topics 6, 7, and 9 on the grounds that, because CX Re's claim for rescission is based solely upon the allegation that B&R falsely answered Question 16, "evidence of chipping, flaking, and peeling paint [is] not relevant." [ECF No. 252 at 1]. CX Re argues, however, that the information remains relevant to Jessica-Carl's "innocent co-insured defense," because "[e]vidence that one or more of Jessica-Carl's properties had lead paint on, or paint chipping, peeling, or flaking off of, any surfaces at the time of the Application, would prove that Jessica-Carl is not an innocent insured." [ECF No. 251 at 2].

Despite CX Re's assertions, Judge Hollander's ruling (denying CX Re's motion to amend its claims for rescission) renders evidence of peeling or chipping paint irrelevant to Jessica-Carl's innocent co-insured defense. As Jessica-Carl explains, it previously moved for a Temporary Restraining Order ("TRO") and Preliminary Injunction to enjoin CX Re from entering into a settlement agreement with B&R. [ECF No. 88]. At the time of the June 9, 2017 hearing on the motion, CX Re's complaint only alleged that it was entitled to rescission because B&R falsely claimed it had not received any lead paint violations. *See* [ECF No. 194 at 6-7] Pl.'s First Am. Compl., [ECF No. 25 ¶¶ 25-26]. The complaint's sole allegation then gave rise to Jessica-Carl's innocent co-insured defense. *See* [ECF No. 194 at 3-4]. In discovery, though, CX Re had produced more than 1,300 documents pertaining to lead paint cases, demonstrating that CX Re was also seeking rescission of the Policies on the grounds of flaking and chipping paint. *Id.* at 4-5. In discussing CX Re's allegations of chipping or peeling paint at the TRO hearing, Judge Hollander stated:

> but my overarching concern is how is that a claim in this case? It's not part of the amended complaint. The amended complaint is there was a falsification in answer to Question 16.
>
> . . . .
>
> If there's some other allegation, it's not part of this case. It won't be part of the case unless there's an amendment.

*Id.* at 10. Thereafter, in response to Judge Hollander's reservations as to whether B&R's

misrepresentation of Question 16 alone could deprive Jessica-Carl of insurance,[2] CX Re argued that Questions 12 and 14 contained misrepresentations "on th[e] application concerning property Jessica-Carl owned." *Id.* at 12-13. Counsel for CX Re argued that, in demonstrating that Jessica-Carl made material misrepresentations, he "was not limited to just the one allegation in the complaint." *Id.* at 15-17. Judge Hollander, however, directly rejected CX Re's position, stating:

> I don't agree with you, Mr. Ruberry. Either you move to amend your complaint. If it's granted and the allegations are thereby expanded, then this issue of lead paint peeling and chipping may well be admissible. But right now . . . I'm going to confine it to the allegations in the complaint. I have to. That's just the way it has to be. It can't possibly be that you get to open the door to issues that were not alleged.

*Id.* at 17. Noting that CX Re has presented no new arguments since the TRO hearing, I find that Judge Hollander's rationale controls. CX Re's sole allegation, giving rise to its claim for rescission, is that B&R falsely denied receiving lead paint violations. Any evidence of lead paint conditions at Jessica-Carl's properties is thus irrelevant, because CX Re failed to allege that the answers to Questions 12 and 14 were false. As such, CX Re is foreclosed from inquiring into Topics 6, 7, and 9 when deposing Mr. Lapidus.

## II. Topic 10

Next, Jessica-Carl objects to Topic 10, on the grounds that the factual bases for affirmative defenses "should be addressed through Answers to Interrogatories" and that "'areas of examination regarding the factual basis for claims and defenses asserted is not properly within the scope of a 30(b)(6) deposition.'" Def.'s Mem., [ECF No. 250 at 2] (quoting *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *20 (D. Md. Feb. 21, 2017). CX Re argues, however, that it "may ask Mr. Lapidus questions in this area, and if Mr. Lapidus were unable to answer such questions, Jessica-Carl's affirmative defenses would fail." Pl.'s Mem., [ECF No. 251 at 2] (citing *Krakauer v. Dish Network L.L.C.*, 165 F. Supp. 3d 432 (M.D.N.C. 2016), *on reconsideration*, No. 1:14-CV-333, 2016 WL 6769132 (M.D.N.C. Sept. 19, 2016), *and amended and superseded on reconsideration*, No. 1:14-CV-333, 2016 WL 6775859 (M.D.N.C.

---

[2] Judge Hollander stated:

> I don't understand right now how that would deprive Jessica-Carl of insurance. I mean, that policy had multiple insureds, the two policies that are at issue in this case. And you want me to say that if there was a misrepresentation as to one property owned by a separate owner, that it forecloses insurance to all of the owners and their properties, even if they didn't personally misrepresent anything? . . . I don't think that's the state of the law.

[ECF No. 194 at 12].

Sept. 19, 2016)).

As the parties' case law demonstrates, federal courts "have split whether to allow parties to use 30(b)(6) depositions to explore facts underlying legal claims and theories." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 384 (D.N.M. 2018) (compiling cases); *compare JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) (holding that "30(b)(6) depositions[] are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *and In re Indep. Serv. Organizations Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) ("Even under the present-day liberal discovery rules, [a party] is not required to have counsel 'marshal all of its factual proof' and prepare a [30(b)(6)] witness to be able to testify on a given defense or counterclaim.") (citation omitted), *with EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432-34 (D. Nev. 2006) (denying the "defendant's request for a protective order to limit the scope of Rule 30(b)(6) deposition questioning to preclude inquiry into the factual bases for defendant's asserted position statements and affirmative defenses"); *and AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994) (compelling the defendants' 30(b)(6) designee to testify as to the factual bases of its affirmative defenses).

Persuasive non-binding rulings within the Fourth Circuit support holding that, at least in the factual circumstances present here, CX Re should be precluded from exploring the facts underlying Jessica-Carl's affirmative defenses at Mr. Lapidus's 30(b)(6) deposition. *See Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005) (stating that, while facts of a "relevant incident" fall within the scope 30(b)(6), "the contentions, i.e. theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order (as the Magistrate Judge did here) that contentions only be inquired into in this fashion."); *Proa v. NRT Mid-Atl., Inc.*, Civ No. AMD-05-2157, 2008 WL 11363286, at *14 (D. Md. June 20, 2008) (striking "topics dealing with affirmative defenses" from a party's 30(b)(6) deposition, in part, because: (1) the information was discoverable by other, less burdensome, means [interrogatories]; and (2) the plaintiff failed to show "substantial need to obtain [the] information through a Rule 30(b)(6) deposition."); *Fish*, 2017 WL 697663, *20; *BB & T Corp. v. United States*, 233 F.R.D. 447, 447-48 (M.D.N.C. 2006) (defining "contention discovery" as including "seek[ing] to discover [a party's] factual and legal bases for its defense" and stating that it "is usually made by serving contention interrogatories which are favored over contention depositions . . . .").

CX Re relies on *Krakauer*, a case within this Circuit, where the court initially granted the plaintiff's motion *in limine* to exclude all evidence of the defendant's affirmative defense, because the defendant completely "failed to provide and facilitate discovery of the evidence of the defense," including: (1) producing "only [one] incomprehensible list" in response to the plaintiff's served interrogatories and request for production of documents; and (2) designating a 30(b)(6) witness who "was unable to answer any questions" about the defense. 165 F. Supp. 3d at 441. On reconsideration, however, the court realized that, in fact, the list that the defendant produced in discovery was comprehensible and that the plaintiff then failed to ask the 30(b)(6)

designee questions regarding it at his deposition. *Krakauer*, 2016 WL 6775859, at *8; *Krakauer*, 2016 WL 6769132, at *1 (granting reconsideration and stating, "the Court was under the impression that [the defendant] had provided only a redacted copy of the [] list. In fact, [the defendant] had provided an unredacted copy [] during discovery") (citation omitted). As such, the court subsequently denied the plaintiff's motion with respect to the produced document (and the 30(b)(6) designee's testimony regarding it) and granted it only with respect "any information beyond" what the defendant produced. *Krakauer*, 2016 WL 6775859, at *8. Importantly, the defendant in *Krakauer* never objected to the scope of the 30(b)(6) deposition, such that whether its designee could refuse to answer questions regarding the factual bases for its defenses was not before the court.

Unlike in *Krakauer*, CX Re has not demonstrated, or even alleged, that Jessica-Carl's written discovery responses regarding its affirmative defenses are deficient. *See* [ECF Nos. 238, 251]. Indeed, Jessica-Carl certified that it "has provided detailed information in Answers to Interrogatories regarding" the factual bases for its affirmative defenses. [ECF No. 237 at 2]. CX Re has not argued to the contrary. *See* [ECF Nos. 238, 251]. Thus, because Jessica-Carl has objected to having its 30(b)(6) designee answer questions regarding the factual bases of its affirmative defenses, and has alternatively provided such information through written discovery, I find that the factual circumstances present are distinguishable from *Krakauer* and, instead, are more closely aligned with *Wilson* and *Proa*. As in *Proa*, CX Re failed to "show[] substantial need to obtain this information through a Rule 30(b)(6) deposition," and the information was discoverable by "less burdensome," alternative means. Thus, like *Wilson*, I find that CX Re's probing of Jessica-Carl's affirmative defenses was "more suitably explored by way of interrogatories" and that CX Re is, therefore, foreclosed from inquiring into the factual bases of Jessica-Carl's affirmative defenses when deposing Mr. Lapidus.

Despite the informal nature of this letter, it will be flagged as an Opinion and docketed as an Order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

cc: Judge Ellen L. Hollander