UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 4, 2018

LETTER TO COUNSEL

    RE:    *CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v. B&R Management, Inc., et al.*; Civil Case No. ELH-15-3364

Dear Counsel:

This case has been referred to me for discovery disputes and related scheduling matters. [ECF No. 78]. Two motions are presently pending: (1) Defendant B&R Management, Inc.'s ("B&R") letter brief in support of its Request for Production of Documents (hereinafter "Motion to Compel") [ECF No. 261], CX Reinsurance Company Limited's ("CX Re") Opposition [ECF No. 264], B&R's Reply thereto filed by Intervenor-Defendant Jessica-Carl, Inc. ("Jessica-Carl") [ECF No. 265],[1] and, in effect, CX Re's Surreply [ECF No. 270]; and (2) Jessica-Carl's Motion to Compel Compliance With the Subpoena that it issued to CX Re's claims adjuster, Pro IS, Inc. ("Pro IS") [ECF No. 249], Pro IS's Opposition [ECF No. 263], and Jessica-Carl's Reply [ECF No. 267]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, B&R's Motion to Compel is GRANTED, and Jessica-Carl's Motion to Compel is DENIED.

**I.    Background**

The factual background of this case has been recited in prior orders and will not be repeated here. Relevant to this motion, on February 26, 2018, B&R issued to CX Re its Request for Production of Documents. [ECF No. 261-1 at 3-4]. Requests 1-5 "seek documents evidencing communications between CX Re, Pro Insurance Solutions, Inc. ('Pro UK') and CX Re's claims administrators pertaining to a lead paint lawsuit filed by [] Pernell Williams in the Circuit Court for Baltimore City, Case No. 24-C-11-003318 (the '[] Williams Lawsuit')." Def.'s Mot., [ECF No. 261 at 1]; *see* [ECF No. 26-1 at 2-3]. Requests 1-5 are limited to communications "from June 2011 when the lawsuit was served until November 3, 2012." Def.'s Mot., [ECF No. 261 at 1]; *see* [ECF No. 26-1 at 2-3]. Importantly, Request 4 expressly states that the communications B&R seeks regarding the Williams Lawsuit "include[] documents that may be in the custody of Pro IS." [ECF No. 261-1 at 3].

In the Williams Lawsuit, Pernell Williams alleged that, from 1995-1998, he resided at 54

---
[1] B&R adopted Jessica-Carl's filing as its Reply. *See* [ECF No. 266].

*CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.*
*B&R Management, Inc., et al.*
Civil No. ELH-15-3364
May 4, 2018
Page 2

Gorman Avenue (an insured property), and that "[b]oth before and after the time [that he] moved into the dwelling," there existed chipping and flaking lead paint "on its interior and exterior walls, doors, floors, ceilings and woodwork . . . ." Williams Compl., [ECF No. 261-3 ¶¶ 1, 3-4]. As a result, Williams "ingested and consumed paint and dust containing lead and lead paint pigment thereby causing" him injury, illness and infirmities. *Id.* ¶ 5. B&R contends that Requests 1-5 are relevant to its laches and limitations defenses, because communications regarding the Williams lawsuit, which was filed in May 2011, will demonstrate that CX Re or Pro UK had "actual notice (express or inquiry) of its rescission claim more than three years prior to filing this lawsuit." Def.'s Mot., [ECF No. 261 at 2].

CX Re, however, contends that my April 3, 2018 letter order, [ECF No. 253], narrowed the scope of discovery such that any documents relating to peeling or chipping lead paint at insured properties are irrelevant and outside of the scope of discovery. *See* Pl.'s Opp., [ECF No. 264 at 2-3]. My April 3rd letter order delineated the scope of CX Re's 30(b)(6) deposition of Jessica-Carl's designee, Alvin Lapidus. *See* [ECF No. 253]. Specifically, CX Re sought to ask Mr. Lapidus about the existence of "chipping, flaking, or peeling paint" and "lead paint on the surfaces" of insured properties at the time B&R submitted the Application. *Id.* at 1. CX Re believed that the presence of chipping or peeling lead paint on the surfaces of insured properties as of the date of the Application would demonstrate that B&R's answers to Questions 12 and 14 also contained misrepresentations and, as such, would affect B&R's "innocent co-insured defense."[2] *Id.* at 2-3. Because Judge Hollander denied CX Re's Motion for Leave to File Second Amended Complaint, however, CX Re's claim for rescission is based solely upon its allegation that B&R falsely answered "No" to Question 16 of the Application, which asks whether "the insured ever had any lead paint violations in the building(s)[.]" Pl.'s First Am. Compl., [ECF No. 25 ¶¶ 25-26]. As such, I held that "[a]ny evidence of lead paint conditions at Jessica-Carl's properties [was] [] irrelevant, because CX Re failed to allege that the answers to Questions 12 and 14 were false." [ECF No. 253 at 3]. CX Re argues that, because my April 3rd holding controls, the Williams Lawsuit documents about chipping, flaking, or peeling paint or lead paint on the surfaces of the property are no longer relevant and are not discoverable.

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

---

[2] Questions 12 and 14, respectively, ask whether there was "any lead paint on any interior or exterior surface of the building[,]" or "any paint chipping or flaking, or otherwise coming off any interior or exterior surface of the building." Application, [ECF No. 1-4].

*CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.*
*B&R Management, Inc., et al.*
Civil No. ELH-15-3364
May 4, 2018
Page 3

### III.    B&R's Request for Production of Documents

CX Re's attempt to extend my April 3rd letter order to the context of B&R and Jessica-Carl's affirmative defenses must fail. As Jessica-Carl demonstrates, *see* Def.'s Repl., [ECF No. 265 at 3], in the related case *CX Re v. Johnson*, I ruled that once CX Re had notice of any claim for rescission, it was "charged with responsibility for investigating, within the limitations period, all potential claims and all potential defendants with regard to the injury." *Johnson*, RWT-15-3131, [ECF No. 104 at 5] (quoting *Estate of Adams v. Cont'l Ins. Co.*, 161 A.3d 70, 94, *cert. denied*, 170 A.3d 294 (Md. 2017)). As such, despite the fact that CX Re only alleged that the insured falsely answered Question 16 of the Application, "evidence of dangerous lead paint conditions at [the insured's] properties as of the date of the Application" were relevant, because the evidence could "impact whether CX Re was on notice that the Application contained misrepresentations to Questions 12 and 14, and, thus, in turn, Question 16." *Id.* This holding is equally applicable to the Williams Lawsuit documents. As in *Johnson*, B&R seeks documents which purportedly demonstrate CX Re and Pro UK's knowledge that deleterious lead paint conditions existed at B&R properties at the time B&R completed the Application. *See* Def.'s Mot., [ECF No. 261 at 1-2]. As such, the Williams Lawsuit documents could establish when CX Re "'in fact knew or reasonably should have known of the [the alleged misrepresentation].'" *Johnson*, RWT-15-3132, [ECF No. 104 at 5] (quoting *CX Reinsurance Co. Ltd. v. Leader Realty Co.*, 219 F. Supp. 3d 542, 546 (D. Md. 2016), *adhered to on reconsideration*, 252 F. Supp. 3d 439 (D. Md. 2017)).

CX Re argues that "[i]t would be patently unfair for the Court to allow Defendants to develop evidence concerning Questions 12 and 14, while prohibiting CX Re from doing the same." Pl.'s Opp., [ECF No. 264 at 3]. CX Re is mistaken. CX Re initially sought information relating to Questions 12 and 14 from Mr. Lapidus solely to bolster its claim for rescission, *see* [ECF No. 250], a purpose for which the information is not relevant. Here, however, Defendants seek the Williams Lawsuit documents not to disprove CX Re's case-in-chief, but to demonstrate that CX Re's claim is barred by laches. My January 19th and April 3rd letter orders can thus be interpreted consistently – documents which purportedly demonstrate CX Re and Pro UK's knowledge that deleterious lead paint conditions existed at B&R properties at the time B&R completed the Application remain relevant to B&R and Jessica-Carl's laches defenses, but irrelevant to CX Re's cases-in-chief. Moreover, as stated in my April 3, 2018 order, even if the information were relevant to Defendants' affirmative defenses, it would not properly be within the scope of a 30(b)(6) deposition. *See* [ECF No. 253 at 3-5] (holding that, in this case, "CX Re's probing of Jessica-Carl's affirmative defenses was 'more suitably explored by way of interrogatories' and that CX Re [was], therefore, foreclosed from inquiring into the factual bases of Jessica-Carl's affirmative defenses when deposing Mr. Lapidus") (quoting *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005)). Thus, the narrow discovery question considered in the April 3, 2018 order is readily distinguishable from the laches argument presented here.

In its Surreply [ECF No. 270], CX Re argues that it may defeat a laches argument by focusing on the second prong of inquiry notice. Inquiry notice, which is sufficient to cause an

*CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.*
*B&R Management, Inc., et al.*
Civil No. ELH-15-3364
May 4, 2018
Page 4

action to accrue, is defined as "'having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action].'" *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 132 (2011) (quoting *Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 562 (2009)). Thus, CX Re contends that it could rebut a laches defense by proving that "a reasonable investigation of the alleged conditions at 54 Gorman Avenue would not have led to CX Re's knowledge of its rescission claim." [ECF No. 270 at 2]. For example, CX Re argues that, because Jessica-Carl was the primary source of information regarding its own property, if Jessica-Carl defended the underlying Williams Lawsuit on the grounds that there was no chipping or peeling lead paint at 54 Gorman Avenue, then "CX Re would likely not have learned during an investigation that" the property had deleterious lead paint conditions. *Id.* at 3. This Court agrees that, despite its numerous suggestions throughout this litigation that 54 Gorman Avenue had contained peeling or chipping lead paint prior to the date of the Application,[3] CX Re remains entitled to rebut B&R and Jessica-Carl's laches defenses by demonstrating that either: (a) such information, alone, would not have caused a reasonable person in its position to undertake an investigation; or (b) any such investigation, if pursued with reasonable diligence, would not have led to knowledge of it claim for rescission. Thus, just as B&R is entitled to any and all documents related to the Williams Lawsuit from CX Re to establish its laches defense, CX Re, in turn, remains entitled to seek written discovery from B&R and Jessica-Carl regarding the Williams Lawsuit to defeat that defense. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense . . . .") (emphasis added).

## IV. Scope of the Williams Lawsuit Documents Subject to Discovery

CX Re and B&R also dispute the required scope of CX Re's production. Specifically, B&R asserts that "any documents or communications that CX Re or Pro UK received related to the [] Williams Lawsuit should be produced," [ECF No. 261 at 4], while CX Re asserts that it need only produce documents that expressly reference dangerous lead paint conditions at 54 Gorman Avenue, [ECF No. 264 at 4]. I agree with B&R that the reasoning from my March 28, 2018 discovery order in *Johnson* is applicable here. I held that: "[a]ny documents demonstrating Pro UK's knowledge of lead paint conditions at Kirson-insured properties prior to August 1, 1997, whether in the possession of CX Re or merely in its 'custody or control,' would be relevant to Johnson's laches defense." *Johnson*, RWT-15-3132, [ECF No. 125 at 2]. Likewise, here, any documents within CX Re's possession, custody, or control demonstrating its or Pro UK's knowledge of lead paint conditions at 54 Gorman Avenue, prior to August 1, 1997, would be relevant to B&R's laches defense. The Williams Lawsuit, at its core, alleged pre-Application

---

[3] *See, e.g.,* Pl.'s Proposed Second Am. Compl., [ECF No. 189-1 ¶¶ 52, 54] (stating that "evidence adduced in the . . . Williams [Lawsuit] shows that there was peeling and flaking paint on the interior surfaces . . . at 54 Gorman Avenue," and that, as such, the answer to Question 14 was false); Pl.'s Mot. to File Second Am. Compl., [ECF No. 189 ¶ 33] (same); Tr. Prelim. Inj. Hr'g, p. 14, [ECF No. 198-1 at 5] ("On 54 Gorman, there was chipping, flaking, peeling paint."). The question of whether any of these statements rise to the level of a judicial admission need not be decided here.

*CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.*
*B&R Management, Inc., et al.*
Civil No. ELH-15-3364
May 4, 2018
Page 5

existence of chipping and peeling lead paint at 54 Gorman Avenue as the basis for recovery. Presumably, then, most of the Williams Lawsuit documents relate to deleterious lead paint conditions at the property. CX Re has failed to adequately demonstrate otherwise, and, as a result, any and all nonprivileged documents relating to the Williams Lawsuit within CX Re's possession, custody, or control are relevant and subject to discovery.

**V.     Timetable for CX Re's Production of Documents**

B&R requests that I order CX Re's responses to Requests 1-5 within ten days of the date of this order. [ECF No. 261 at 5]. Alternatively, B&R requests that I order CX Re to produce documents within its possession immediately, while ordering CX Re to produce responsive documents within its control on "an ongoing basis" as it receives them. [ECF No. 265]. CX Re, meanwhile, has indicated that it would produce responsive documents by May 7, 2018, within 45 days of B&R's initial request. [ECF Nos. 261-2 at 2; 264 at 3]. Given that May 7th is now imminent, and the discovery deadline remains July 6, 2018, CX Re is hereby directed to honor its commitment to produce the responsive documents within its or Pro UK's immediate possession on or before May 11, 2018.

Responsive documents within Pro IS's possession, however, shall be produced on or before May 23, 2018. In its opposition, CX Re cites the fact that Pro IS has objected to providing Jessica-Carl documents relating to the Williams Lawsuit pursuant to Jessica-Carl's subpoena, on the grounds that such a production would impose upon it an undue burden. [ECF No. 264 at 5]; *see* [ECF No. 263 at 9-15]. Importantly, however, Pro IS's objection is based on the fact that it would be producing documents to Jessica-Carl as a non-party and, as such, it is entitled to additional protection against significant expense. *See* [ECF No. 263 at 6] (stating that the Court "**must** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" with a subpoena) (quoting Fed. R. Civ. P. 45(d)(2)(B)) (emphasis in original). Pro IS's objection is inapposite. Here, B&R seeks the documents via first party discovery, because CX Re has conceded it has control over responsive documents with Pro IS's possession. While CX Re is entitled to some additional time to make the production, the burden concerns attendant to third-party discovery are not applicable.

**VI.    Jessica-Carl's Motion to Compel Pro IS's Compliance With Subpoena**

Similar to B&R's Request for Production of Documents, Jessica-Carl's Motion to Compel Pro IS's compliance with its subpoena seeks "communications, or documents evidencing communications," between CX Re, Pro UK, and Pro IS related to the Williams Lawsuit from August 30, 2011 through November 3, 2012. *Compare* [ECF No. 261-1 at 3] with [ECF Nos. 249-1 at 1-2, 267 at 7]. Importantly, I held in the related case of *CX Re v. Johnson* that CX Re conceded that it had "control" over responsive documents within the possession of Pro IS. *Johnson*, RWT-15-3132, [ECF No. 125 at 2-3]. That finding is also applicable here. Because B&R has already requested CX Re to produce the same documents relating to the Williams Lawsuit that are within the possession of Pro IS, Jessica-Carl's subpoena seeks

*CX Reinsurance Company Limited, f/k/a CNA Reinsurance Company Limited v.*
*B&R Management, Inc., et al.*
Civil No. ELH-15-3364
May 4, 2018
Page 6

duplicative discovery, which is prohibited by my February 7, 2018 discovery order. *See* [ECF No. 246]. In accordance with my directive above, CX Re must provide to B&R any and all documents relating to the Williams Lawsuit within its possession, custody, or control, including responsive documents within the possession of Pro IS. Accordingly, Jessica-Carl's Motion to Compel Compliance with its subpoena, [ECF No. 249], is denied.[5]

**VII.    Conclusion**

For the reasons discussed above, B&R's Motion to Compel [ECF No. 261] is GRANTED, and Jessica-Carl's Motion to Compel Compliance with Subpoena [ECF No. 249] is DENIED.

Despite the informal nature of this letter, it will be flagged as an opinion and docketed as an Order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[5] Jessica-Carl has also filed a Motion to Compel Raphael & Associates ("Raphael") (CX Re's previous claims adjuster) to Comply with a Subpoena, which seeks additional documents relating to the Williams Lawsuit. *See* [ECF No. 265 at 1]. That motion to compel is currently pending in the District of New Jersey. *Id.* Importantly, unlike with Pro IS, I have not yet ruled on the issue of whether CX Re has control over documents within Raphael's possession, although the issue is pending in *CX Re v. Johnson*, RWT-15-3132, [ECF Nos. 132, 136, 139, 140, 142, 145].